Exhibit A

 TRANSPERFECT

I, David Serafino, hereby certify that I am competent to translate from Spanish to English and that the attached translation is, to the best of my knowledge and belief, a true and accurate translation of the document entitled "Gov of PR v. FS et al served 1.9.26" from Spanish to English.


_____
[NAME]


_____2/8/2026_____
[DATE]


LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 92 CITIES WORLDWIDE

[logo:] ◉ Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
01/09/2026
CT Log Number 551061460

## Service of Process Transmittal Summary

**TO:**     ANDREW PUGH
FirstStudent Inc
191 ROSA PARKS ST FL 8
CINCINNATI, OH 45202-2573

**RE:**     **Process Served in Delaware**

**FOR:**    FIRSTGROUP INTERNATIONAL, INC. (Domestic State: DE)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | GOVERNMENT OF PUERTO RICO *ex rel.*, MESSO LLC, PLAINTIFF vs. FIRST TRANSIT OF PUERTO RICO, INC. |
| **CASE No.:** | SJ2025CV7134 |
| **PROCESS SERVED ON:** | The Corporation Trust Company, Wilmington, DE |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/09/2026 at 2:47 p.m. |
| **JURISDICTION SERVED:** | Delaware |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification, ANDREW PUGH |
| | andreww.pugh@firststudentinc.com |
| | Email Notification, Amy Pucke amy.pucke@firststudentinc.com |
| | Email Notification, Jen Lorenz jen_lorenz@gbtpa.com |
| | Email Notification, Leanne Nieberding |
| | leanne.nieberding@firststudentinc.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Trust Company |
| | 1209 Orange Street |
| | Wilmington, DE 19801 |
| | 8775647529 |
| | Major Account Team2@wolterskluwer.com |
| **REMARKS:** | We cannot complete the transmittal because the attached documents are in a foreign language. We are forwarding as process so that you can determine next steps. |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Page 1 of 1

[logo:] ® Wolters Kluwer

## PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Fri, Jan 9, 2026
**Server Name:**                             Kevin Dunn

| Entity Served | FIRSTGROUP INTERNATIONAL, INC. |
|---|---|
| Case Number | SJ2025CV7134 |
| Jurisdiction | DE |

| Inserts | | |
|---|---|---|
|  |  |  |

[QR code]

[illegible]

Form OAT 1721                                                    Page 1 of 3
(Rev. August 2023)

**COMMONWEALTH OF PUERTO RICO**          [signature]
**GENERAL COURT OF JUSTICE**
**COURT OF FIRST INSTANCE**
**SUPERIOR CHAMBER OF SAN JUAN**

| | |
|---|---|
| GOVERNMENT OF PUERTO RICO *EX REL.*, MESSO LLC <br> **Plaintiff** <br><br> V. <br><br> FIRST TRANSIT OF PUERTO RICO, INC. ET AL. <br> **Defendant** | Case No. SJ2025CV07134 <br> Chamber No. <u>603</u> <br><br> Civil Action of: FRAUDULENT CLAIMS TO GOVERNMENT PROGRAMS, CONTRACTS, AND SERVICES (LAW NO. 154-2018) |

**SUMMONS**

UNITED STATES OF AMERICA, SS
THE PRESIDENT OF THE UNITED STATES
THE COMMONWEALTH OF PUERTO RICO

**TO: FIRSTGROUP INTERNATIONAL, INC.**
CORPORATION TRUST CENTER 1209, ORANGE ST WILMINGTON, DELAWARE, UNITED STATES 19081

YOU ARE HEREBY summoned to file your responsive pleading with the court within 60 days of service of this summons, excluding the day of service. You must file your responsive pleading through the Unified Case Management and Administration System (SUMAC, *Sistema Unificado de Manejo y Administración de Casos*), which you can access using the following web address: https://www.poderjudicial.pr/index.php/tribunal-electronico/, unless the case is a physical file or you are representing yourself, in which case you must file your responsive pleading with the Clerk of the Court and provide a copy to the plaintiff's attorney or to the plaintiff if they are not legally represented. If you fail to file your responsive pleading within the aforementioned period, the court may enter a default judgment against you and grant the relief sought in the complaint, or any other relief, if the court, in the exercise of its sound discretion, deems it appropriate. You are furthermore advised that, in cases under Law No. 57-2023, entitled the Law for the Prevention of Abuse, Preservation of Family Unity and for the Safety, Well-being and Protection of Minors, among the remedies that the Court may grant are the permanent placement of a minor outside of their home, the initiation of processes for the deprivation of parental rights, and any other measure in the best interest of the minor. (Article 33, subsections b and f of Law No. 57-2023). You are advised of your right to appear accompanied by counsel where applicable.

Attorney's Name: Alfonso S. Martínez Piovanetti
RUA (*Registro Único de Abogados* [Attorney Registration Number]: 16726
Address: PO Box 8013, SAN JUAN, PUERTO RICO, PUERTO RICO, 00910
Tel: 7872346239 / Fax: 7877243535
Email: alfonso@martinezpiovanetti.com

Issued under my signature and seal of the Court, on <u>DECEMBER 2, 2025</u>

| <u>Griselda Rodríguez Collado</u> <br> Name of the <br> Regional Secretary | [stamp:] <br> COMMONWEALTH OF PUERTO RICO <br> GENERAL COURT OF JUSTICE <br> COURT OF FIRST INSTANCE <br> SUPERIOR CHAMBER OF SAN JUAN | By: <u>Loraine Rosado Pérez</u> <br> Name of the <br> Assistant Clerk to the Court <br> [signature] <br> _____ <br> Signature of the <br> Assistant Clerk to the Court |
|---|---|---|

[illegible]

Form OAT 1721                                                                    Page 2 of 3
(Rev. August 2023)

Case No. **SJ2025CV07134**

### CERTIFICATE OF SERVICE BY THE BAILIFF

I, _____Bailiff of the Court of First Instance of Puerto Rico,
Chamber of _____
do CERTIFY that the service of the summons and filing of the above-referenced case was conducted by me on the
_____of _____of_____, at _____☐ a.m. ☐ p.m., as follows:

☐ By personal delivery to the defendant at the following physical address:
_____

☐ Accessible in the immediate presence of the defendant at the following physical address:
_____

☐ Leaving a copy of the documents with an agent authorized by the defendant or designated by law to receive
    summonses at the following physical address:
_____

☐ The summons could not be personally served because:
_____

In _____, Puerto Rico, on_____._____
_____

| Name of the Regional Bailiff | Name of the Bailiff of First Instance and Badge Number |
|---|---|

Signature of the Bailiff of First Instance

### SERVICE OF SUMMONS BY A PRIVATE INDIVIDUAL

I, _____ declare that I have legal standing in accordance with
Rule 4.3 of the Civil Procedure of Puerto Rico, and certify that the service of the summons and filing of the case in
question was carried out by me, on _____,  _____, _____, as follows:
☐ By personal delivery to the defendant at the following physical address:
_____

☐ Accessible in the immediate presence of the defendant at the following physical address:
_____

☐ Leaving a copy of the documents with an agent authorized by the party required or designated by law to receive
    summonses at the following physical address:
_____

☐ The summons could not be personally served because:
_____

COSTS OF SERVICE: $_____

### DECLARATION OF THE PROCESS SERVER

I declare under penalty of perjury, under the laws of the Commonwealth of Puerto Rico, that the information provided
in the service of the summons is true and correct.
AND IN WITNESS WHEREOF, I sign this document in _____ , Puerto Rico, on _____ _____ _____

_____          _____
       Signature of the process server                              Address of the process server

AFFIDAVIT NO. _____ (if sworn to before a notary)
    Sworn and signed before me by _____ ,
of the aforementioned personal circumstances, to whose recognizance I do attest
_____
(personal knowledge or, failing that, accreditation of the supplementary medium provided by the Notarial Law)
In _____ , Puerto Rico, on _____._____
_____   By: _____
| Name of Regional Notary or Clerk | Name of Assistant Clerk to the Court |
|---|---|

Signature of Assistant Clerk to the Court

Case No. **SJ2025CV07134**

SJ2025CV07134, 11/29/2025 01:17 pm Entry No. 13 Page 3 of 3
[illegible]

Form OAT 1721                                                   Page 3 of 3
(Rev. August 2023)

### PROCESSING UNDER LAW NO. 57-2023

I, _____certify that the service of the summons and filing of the claim in the case in question was carried out by me, on _____ of ___, _____, as follows:

☐ By sending an email to the defendant at the following address:
_____

☐ By sending it to the defendant by regular mail at the following address:
_____

### DECLARATION OF THE SERVER

I declare under penalty of perjury, under the laws of the Commonwealth of Puerto Rico, that the information provided in the service of the summons is true and correct. AND IN WITNESS WHEREOF, I sign this document in   , Puerto Rico, on _____,_____

_____          _____
Signature of the server

Address of the server

AFFIDAVIT NO. _____ (if sworn to before a notary)

Sworn and signed before me by _____ , of the aforementioned personal circumstances, to whose recognizance I do attest
_____
(personal knowledge or, failing that, accreditation of the supplementary medium provided by the Notarial Law)

In _____ , Puerto Rico, on _____,_____

_____          By: _____
Name of Regional Notary or Clerk                     Name of Assistant Clerk to the Court

_____
Signature of Assistant Clerk to the
Court

[QR code]

**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF JUSTICE**
**COURT OF FIRST INSTANCE**
**SAN JUAN CHAMBER**

| | |
|---|---|
| GOVERNMENT OF PUERTO RICO *ex rel.,* MESSO LLC | CIVIL No.: |
| **PLAINTIFF** | **REGARDING:** *QUI TAM* CLAIM (LAW NO. 154-2018); UNDUE COLLECTION |
| V. | |
| FIRST TRANSIT OF PUERTO RICO, INC.; FIRST TRANSIT INC.; FIRST TRANSIT TRANSPORTATION, LLC; FIRST TRANSIT PARENT, INC.; FIRSTGROUP AMERICA, INC. (FGA); FIRSTGROUP AMERICA HOLDINGS, INC.; FIRSTGROUP INTERNATIONAL, INC.; FIRST STUDENT PARENT, INC.; FIRST STUDENT, INC.; FIRST STUDENT HOLDING COMPANY LLC; FIRST STUDENT SERVICES LLC; FIRST STUDENT TRANSPORTATION LLC; FIRSTGROUP AMERICA PLC; RECESS HOLDCO LLC; TRANSDEV GROUP; TRANSDEV NORTH AMERICA, INC. | |
| **DEFENDANT** | |

## *QUI TAM* CLAIM UNDER SEAL

**BEFORE THE HONORABLE COURT:**

**APPEARS** the plaintiff, the Government of Puerto Rico *ex rel.*, MESSO LLC, in its capacity as *qui tam* relator, through the undersigned legal representation, and very respectfully states, alleges and requests:

### I.    INTRODUCTION

The fundamental purpose of this action is to vindicate the proper use of public funds and to recover substantial sums collected through a large-scale fraud scheme perpetrated by the defendant against the Highways and Transportation Authority ("ACT", *Autoridad de Carreteras y Transportación*) and the Government of Puerto Rico. As explained in detail below, for more than a decade, the defendant First of Transit Puerto Rico, Inc. ("FTPR"), in apparent concert and common agreement with the co-defendant affiliated entities, has submitted false or fraudulent claims in connection with a service contract for certain bus routes originally granted in 2008. Said contract was renewed multiple times during this period through amendments that were granted without auction or other competitive mechanism, sometimes with retroactive effect and without such amendments even being duly registered in the Comptroller's Office,

as is a constitutive requirement for their validity. All of this is in contravention of the most basic principles applicable to government contracting in Puerto Rico and the requirements of the federal government for contracts of this magnitude that are fully or partially funded with federal funds.

Worse yet, the defendant has substantially breached the specific terms of the contract itself and has engaged in a pattern of providing incomplete, false, or fraudulent information in documents submitted to the Government in order to improperly collect substantial amounts of public funds. Consequently, the invoices and other documentation that the defendant has submitted to the Government in order to obtain remuneration for this service contract constitute false or fraudulent claims under the provisions of Act No. 154 of July 23, 2018, known as the *Fraudulent Claims to Programs, Contracts, and Services of the Government of Puerto Rico Act*, 32 LPRA § 2931 et seq., (hereinafter "Act No. 154-2018").

For this reason, MESSO LLC appears before this Honorable Court on behalf of and for the benefit of the Government of Puerto Rico and in its capacity as Relator of a fraud, as authorized by Act No. 154-2018. The plaintiff has independently obtained evidence establishing violations of the aforementioned statute and, therefore, appears before this Honorable Court seeking the remedies provided by said law or, alternatively, the restitution to the Government of Puerto Rico of all public funds improperly collected by the defendant.

Furthermore, the plaintiff seeks to have this Honorable Court halt FTPR's fraudulent scheme, which continues to this day, for the undue collection of public funds. This scheme has caused losses to the State in excess of eighty-five ($85) million [dollars] through a service contract, as amended on multiple occasions, that does not comply with the regulations applicable to government contracting and that furthermore puts at risk the safety and efficiency of public transportation on our island.

In fact, FTPR continues to bill and charge the ACT for services provided under Contract 2024-000163. Said contract was granted by the ACT following the awarding of RFP S-22-24 dated April 12, 2022, which was challenged in court and resulted in judgments validated by the Supreme Court of Puerto Rico, through which the award of the RFP was revoked; it was determined that FTPR should have been disqualified from the RFP since it had submitted financial statements that did not correspond to the bidding entity; and the case was returned to the agency for subsequent procedures. Moreover, as recently as last July 9, 2025, according to the orders issued by the Court of First Instance, the ACT was obliged to

cancel the service contract that would have been granted under RFP S-22-24 effective August 15, 2025. Given these circumstances, we seek the urgent and specific intervention of this Honorable Court to vindicate the public interest and penalize a multimillion-dollar fraud against the Government of Puerto Rico.

## II.    JURISDICTION AND COMPETENCE

This Court has jurisdiction and competence to hear the cause of action under the heading in accordance with the provisions of Act No. 201-2003, as amended, known as the "Judiciary Act of the Commonwealth of Puerto Rico of 2003", 4 LPRA sec. 24 et seq., and Article 5,001 of Act No. 154-2018, 32 LPRA sec. 2935.

The Relator certifies under penalty of perjury that it did not obtain the information from any of the persons who are prohibited from filing a Complaint pursuant to Article 1.02(g) of Act No. 154-2018. For these purposes, the Relator affirms and declares under oath that it is the original source of the information that is the subject of this Complaint and that it was the product of its own independent compilation and investigation. This informational plea is included in order to strictly comply with the applicable legal requirements under Act 154-2018.

## III.    THE PARTIES

1.    The plaintiff and Relator, Messo LLC, is a limited liability company created and organized under the laws of the Commonwealth of Puerto Rico. Its mailing address is PO BOX 10051 San Juan, PR 00908 and its phone number is 787-934-0805. The plaintiff appears in this lawsuit in the capacity of Relator, under the provisions of Act 154-2018, for the benefit and on behalf of the Government of Puerto Rico.

2.    The co-defendant, First Transit of Puerto Rico, Inc. ("FTPR"), is a corporation created and organized under the laws of the State of Delaware with registration number 3660855. Its physical address is Ochoa Building, 500 Calle de la Tanca, Suite 514, San Juan, PR, 00901. Its mailing address is PO Box 9022946, San Juan, PR, 00902-2946 and its telephone number is 302-658-7581. Said legal entity was authorized to conduct business in the Commonwealth of Puerto Rico as of June 26, 2003 and, according to its Certificate of Authorization to do business in Puerto Rico, they proposed exclusively to operate public transportation systems.

3.    The co-defendant, First Transit, Inc., is a corporation created and organized under the laws of the State of Delaware with registration number 727905. Its address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

4.    The co-defendant, First Transit Transportation, LLC, is a limited liability company created and organized under the laws of the State of Delaware with registration number 3712982. Its address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

5.    The co-defendant, First Transit Parent, Inc., is a corporation created and organized under the laws of the State of Delaware with registration number 5915216. Its address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

6.    The co-defendant, FirstGroup America, Inc. (FGA), is a corporation created and organized under the laws of the State of Delaware with registration number 3092878. Its mailing address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

7.    The co-defendant, FirstGroup America Holdings, Inc. (FGAH), is a corporation created and organized under the laws of the State of Delaware with registration number 2230708. Its address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

8.    The co-defendant, FirstGroup International, Inc. (FGAH) [sic], is a corporation created and organized under the laws of the State of Delaware with registration number 3617098. Its address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

9.    The co-defendant, First Student Parent, Inc., is a corporation created and organized under the laws of the State of Delaware with registration number 5915198. Its mailing address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

10.    The co-defendant, First Student, Inc., is a corporation created and organized under the laws of the State of Delaware with registration number 2020229. Its address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

11.   The co-defendant, First Student Holding Company LLC, is a limited liability company created and organized under the laws of the State of Delaware with registration number 10217004. Its address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

12.   The co-defendant, First Student Services LLC, is a limited liability company created and organized under the laws of the State of Delaware with registration number 2945707. Its address is 251 Little Falls Drive, Wilmington, DE, 19808 and its telephone number is 302-636-5401.

13.   The co-defendant, First Student Transportation, LLC, is a limited liability company created and organized under the laws of the State of Delaware with registration number 3712974. Its address is 251 Little Falls Drive, Wilmington, DE, 19808 and its telephone number is 302-636-5401.

14.   The co-defendant, FirstGroup America PLC, is a public limited company registered in Scotland under registration number 157176. Its address is 395 King Street, Aberdeen, United Kingdom, AB24 5RP and its phone number is +44 (0)1224 650100.

15.   The co-defendant, Recess HoldCo, LLC, is a limited liability company created and organized under the laws of the State of Delaware with registration number 5925533. Its address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

16.   The co-defendant, Transdev Group, is a public limited company registered in France under registration number 521 477 85. Its address is 3 Allée de Grenelle, 92442 Issy-les- Moulineaux, France.

17.   The co-defendant, Transdev North America, Inc., is a corporation created and organized under the laws of the State of Delaware with registration number 2983339. This entity operates as a subsidiary of Transdev Group. Its address is Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 and its telephone number is 302-658-7581.

18.   First Student and First Transit are lines of business of First Group PLC to which First Transit PR, Inc. belonged.

19.   The co-defendant Transdev North America, Inc., as part of the acquisition of certain lines of business from First Group PLC, recently acquired First Transit, Inc., and First Transit of Puerto Rico, Inc., ("FTPR").

20.   All co-defendants listed in this lawsuit are directly or indirectly a part of the corporate structure, chain of control and/or business succession transactions related to First Transit of Puerto Rico, Inc. ("FTPR") and First Transit, Inc. Collectively, these entities have operated under the "First Transit" and "First Student" lines of business of the international conglomerate *FirstGroup PLC* and its subsidiaries, exercising corporate control, operational management, financial management and/or receiving benefits from the improper billings and collections challenged herein. Some of these entities, including *First Transit, Inc.*, contractually appeared as corporate guarantors of FTPR's obligations; others, such as *FirstGroup America, Inc.*, *FirstGroup America Holdings, Inc.*, *FirstGroup International, Inc.*, *First Student Parent, Inc.*, *First Student, Inc.*, *First Student Holding Company LLC*, *First Student Services LLC and First Student Transportation LLC*, constitute affiliated companies through which assets, staff, revenues and obligations were managed within the same corporate group. Entities such as *Recess HoldCo LLC, Transdev Group,* and *Transdev North America, Inc.* participated in the acquisition, absorption, or succession of *First Transit*'s operations*,* assuming or continuing its business and benefiting from the revenue generated by the contracts questioned herein. By virtue of its control, participation or exploitation of the alleged fraudulent contracting and billing scheme, all co-defendants are jointly and severally liable for the claims asserted in this Lawsuit.

## IV.   THE FACTS

21.   The Highway and Transportation Authority ("ACT") is a public corporation of the Government of Puerto Rico, and as such, falls within the scope of Act No. 154-2018. 32 LPRA. Sec. 2931a(k).

22.   On June 30, 2008, the ACT and First Transit of Puerto Rico, Inc., ("FTPR" or "First Transit Puerto Rico") granted a contract called SERVICE CONTRACT FOR THE OPERATION, MAINTENANCE AND MANAGEMENT OF METROBUS I AND METROBUS EXPRESS PUBLIC TRANSPORTATION ROUTES, registered in the Contracts Registry of the Comptroller's Office as Contract No. 2008-000248 ("the Original Contract").

23.   In that Original Contract, First Transit, Inc., the parent entity of FTPR, appeared as corporate guarantor for the execution and payment of the contractual obligations incurred in the aforementioned legal transaction.

24.   The term of the Original Contract, which was the product of Tender S-07-20, was from October 1, 2008 to September 30, 2013.

25.   In addition, the scope of the services of the Original Contract only provided for the operation and service of three (3) bus routes for the purpose of supplying public transportation demand in Puerto Rico, namely: Metrobus IA, Metrobus IB and Metrobus Express (Capetillo - Sagrado Corazón; Sagrado Corazón – Covadonga routes; Luis Muñoz Rivera express to provide express service between Sagrado Corazón and Covadonga).

26.   Through the aforementioned Original Contract, FTPR was obliged to operate and provide service on the MetroBus I and MetroBus Express routes for five (5) years for the total amount of $57,614,908.80, which could be increased to $59,183,909.00, in addition to undertaking the system start-up and renting the units for operations in the east area.

27.   In addition, in order to initiate the operation and the agreed services, FTPR charged the ACT the amount of $1,247,330.00 for the initial implementation, or "start-up", thereof. See Section 4.7.1 of the Original Contract.

### A. _Improper collection scheme for bus rentals after their ownership was transferred to the ACT_

28.   With regard to this case and the claim under Act No. 154-2018 and/or for the improper collection of public funds, the Original Contract specified that FTPR was the sole owner of the 27 buses that would be used to service the MetroBus I and MetroBus Express routes.

29.   In particular, FTPR was obliged to provide those buses to operate the routes subject to the contract for amounts specified in the contract, which equated to a lease. However, by the date of granting the Original Contract, in contravention of Section 6.4, said entity did not have, nor does it have as of the date of this claim, the licenses required to lease vehicles in Puerto Rico. See Section 2.6 and Section 6.4 of the Original Contract:

2.6.1 **Ownership of the Buses:** The OPERATOR is the sole owner of twenty-seven (27) of the buses to be used on the Metrobus 1 and Metrobus Express routes, as shown in Annex E and any subsequent amendments to Annex E made by the OPERATOR to include new buses.

The OPERATOR has agreed with the PRHTA to provide twenty-seven (27) buses for service under this Contract no later than September 30, 2008. On that same date, the OPERATOR must provide the PRHTA with a list of the buses to be delivered, which must include their respective serial numbers. This list will be included in this Contract as Annex D. The operation, use and maintenance of those buses, and any replacement and/or addition of buses by the OPERATOR, will be governed by the terms and conditions of this Contract (translation supplied).

6.4 The Operator undertakes to obtain all necessary permits, approvals, authorizations and licenses required by federal, state or municipal agencies for this type of operation. It agrees to comply with all fiscal, tax, labor, environmental or safety laws, ordinances and regulations (including vehicle inspections), or any other laws, ordinances and regulations in force or that may be adopted or approved during the term of this contract. It will ensure that all hired or subcontracted personnel who require licenses or any other permits to practice their profession or occupation comply with applicable legal provisions.

30.   In fact, under Section 4.1 of the Original Contract, the contract payments included one monthly item for the cost of renting the vehicles and another monthly item for the cost of operating the service. Such payments were broken down as follows:

4.1.1 **For the FIRST year**, Cost of Vehicles: $1,048,234 dollars, Cost of Operation: $7,200,000.00 dollars, paid monthly on a *pro rata* basis.

4.1.2 **For the SECOND year,** Cost of Vehicles: $2,125,304 dollars, Cost of Operation: $9,101,023 dollars, paid monthly on a *pro rata* basis.

4.1.3 **For the THIRD year**, Cost of Vehicles: $2,125,304 dollars, Cost of Operation: $59,625,240 dollars, paid monthly on a *pro rata* basis.

4.1.4 **For the FOURTH year**, Cost of Vehicles: $2,125,304 dollars, Cost of Operation: $10,373,233 dollars, paid monthly on a *pro rata* basis.

4.1.5 **For the FIFTH year**, Cost of Vehicles: $2,125,304 dollars, Cost of Operation: $11,075,561 dollars, paid monthly on a *pro rata* basis (translation supplied).

31.    Meanwhile, as the buses were arriving in Puerto Rico, FTPR charged the ACT for the rental of 10 buses in the amount of $558,149.54 per month over a three-month period (July, August and September), which translates into a total rental of $1,674,448.62. (Section 4.1.7 of the Contract). However, in order to provide the rental service, said entity required the issuance of a rental vehicle concession from the former Public Service Commission, now called the Bureau of Transportation and Other Public Services ("NTSP", *Negociado de Transporte y otros Servicios Públicos*). FTPR does not hold such a concession, nor did it hold one at the time it provided the leasing services, in contravention of Section 6.4 of the Original Contract, as can be verified in the public registries and government records of the NTSP.

32.    However, on July 8, 2010, the first amendment to the Original Contract, known as Amendment 2008-0002348-A, was granted for the sole purpose that FTPR would sell to the ACT twenty (20) new buses to be used on the routes covered in the same contract for the amount of $6,348,545.56. However, in order to manage the sale of the vehicles to the ACT, said company required a valid Motor Vehicle, Trailer and Semi-Trailer Dealer License ("Dealer License"). This license is issued by the Secretary of the Department of Transportation and Public Works (DTOP, *Departamento de Transportación y Obras Públicas*) and requires the submission of an application using the authorized form. FTPR, in contravention of Section 6.4 of the Original Contract, does not hold such Dealer's License, nor did it hold it as of the date of the amendment.

33.    Specifically, the aforementioned Section 2.6 of the Original Contract was amended in order to establish the following regarding the ownership of the buses:

Effective December 15, 2009, the fleet of vehicles to be used for the Metrobus 1 and Metrobus Express routes will consist of thirty (30) buses, including twenty (20) new buses purchased by the OPERATOR and ten (10) buses that have been previously used by the OPERATOR and are

owned by the OPERATOR. The vehicle fleet is identified in Annex D-1, attached hereto. The OPERATOR will transfer the title to the twenty (20) new buses in the fleet that are not owned by the PRHTA to the PRHTA once the OPERATOR receives the payment of $6,348,545.56 from the PRHTA for the twenty (20) new buses. The payment will be made in a single lump sum by the PRHTA to the OPERATOR, no later than July 30, 2010 (translation supplied).

34.    Although this amendment changed the ownership of the FTPR vehicles to transfer it to the ACT, at **that time, <u>the payment structure in the Original Contract (Article 4.1 of the Contract) was not amended</u> to eliminate the vehicle cost of $2,125,304.00** per year (for the lease of said vehicles, which would obviously no longer be necessary since the vehicles would have become the property of the ACT).

35.    However, and in a false or fraudulent manner in accordance with the provisions of Act No. 154-2018, after leasing the buses without having the concession required by the Public Service Commission, now the NTSP, and after selling the buses to the ACT without having the license required by the DTOP, FTPR continued to submit invoices through which it improperly charged the same rental amount for said vehicles under the Original Contract for several additional years after the ownership of said buses had passed to the ACT.

36.    Such false or fraudulent claims brought by the defendant, which resulted in the improper collection of public funds, caused the Government of Puerto Rico an approximate loss of over seventeen million, five-hundred thousand dollars ($17,500,000.00) according to a reasonable calculation based on the contractual documents in the Comptroller's Contracts Registry.

37.    Furthermore, FTPR's Certificate of Incorporation states that said entity was organized solely for the operation of the public transportation system and does not provide for the operation of a motor vehicle rental or sales business.

38.    Even worse, FTPR does not hold a license to lease or sell vehicles in Puerto Rico in order to carry out these commercial activities. Therefore, FTPR could not lease or sell motor vehicles.

39.    The ACT leased and purchased those 20 motor vehicles from FTPR without holding an auction or other competitive market mechanism as required by government contracting rules aimed at the sound administration of public funds.

40.    The purchase and sale of those 20 vehicles was not part of the Original Contract or the auction leading thereto.

41.    Finally, it cannot be overlooked that **Amendment 2008-0002348-A was granted on July 10, 2010, while the transaction entered into in that legal agreement took effect retroactively, on December 15, 2009.**

42.   This constituted a retroactive contracting that is prohibited by government contracting rules in Puerto Rico and it therefore suffers from absolute nullity. *See Rodriguez Ramos et al. v. ELA et al., 190 D.P.R. 448, 467 (2014) Jaap Corp. v. Dept. of State, 187 D.P.R. 730 (2013); Alco Corp. v. Mun. de Toa Alta., 183 D.P.R. 530, 536–37 (2011).*

43.   Consequently, both the portion of the public funds pertaining to the rental of the motor vehicles charged and received by FTPR under the Original Contract, as well as the entirety of the public funds charged and received by the defendant in consideration of the aforementioned Amendment, not only gave rise to false claims by FTPR for the rental that was agreed upon in the Original Contract, but the entirety of the benefits under a contract with retroactive effect, were improperly charged both for the sale of the buses and for the rental of other buses and related services, and therefore the full return of the public funds billed and collected by FTPR from the Government of Puerto Rico is warranted.

**B.   *Amendments and extension of the Original Contract without auction***

44.   Subsequently, and without any competitive process, the ACT continued to extend the Original Contract through multiple amendments that were granted without auction, "request for proposals" ("RFP") or "request for qualifications" ("RFQ"), as required by the regulations applicable to government contracting in Puerto Rico and federally under 2 CFR § 200 (for a contract that is partially paid with federal funds).

45.   By not entering into an auction, RFP or RFQ for the extension of these services, the ACT had no opportunity to verify whether the prices invoiced by FTPR remained competitive in the market for the services provided.

46.   Although the contract was to be paid for with federal funds and was initially auctioned for three specific routes, the ACT added additional routes through these amendments without an auction or other competitive public procurement mechanism, which involved an additional cost of approximately one hundred and thirty-three million dollars ($133,000,000.00).

47.   In addition, by granting all of these amendments to the Original Contract without auction, RFP or RFQ, the Government of Puerto Rico suffered substantial damages by not having acquired these services in accordance with a competitive market process. Such damages are reasonably estimated to be at least twenty-five million dollars ($25,000,000.00).

48.   Specifically, with respect to the multiple amendments made to the Original Contract:

1) **Amendment 2008-000248-A:**

    i.   On July 8, 2010, FTPR and the ACT amended the Original Contract (2008-000248-A) for the sole purpose of the former selling to the latter twenty (20) new buses for the amount of $6,348,545.56.

    ii.   **Although this amendment changed the ownership of the vehicles from FTPR to the ACT, the payment structure in the Original Contract (Article 4.1 of the Contract) was not amended to eliminate the cost of vehicles for $2,125,304.00 per year (a rental that would no longer be necessary).**

2) **Amendment 2008-000248-B:**

    i.   On October 19, 2011, FTPR and the ACT amended the Original Contract (2008-000248-B) for the purpose of establishing a Bus Rapid Transit System (BRT). For this purpose, FTPR would provide trained drivers and mechanics at a rate of:

        1.   $9,000 weekly for up to 375 miles and 200 hours weekly, plus a 10% profit.

        2.   Fuel expenses would be borne by the ACT.

    ii.   Damages in the operation of the buses would be covered by the ACT, except for those caused by the Operator's negligence.

3) **Amendment 2008-000248-C:**

    i.   On November 4, 2012, FTPR and the ACT amended the Original Contract (2008-000248-C) for the purpose of FTPR providing drivers and mechanics for the buses acquired in Amendment B, which were to be delivered to the ACT between April and August 2012.

    ii.   The amendment established that this did not represent an increase in the amount, nor in the term of the Original Contract, but it included new service routes without having held any public auction or other fair competition mechanism for the contracting.

4) **Amendment 2008-000248-D:**

    i.   On December 26, 2012, FTPR and the ACT amended the Original Contract (2008-000248-D) for the purpose of FTPR providing drivers and mechanics for new buses that the ACT acquired from the Getaway company of Florida, which were in turn

used as part of a contract between Getaway and the Florida Department of Transportation, at a rate of:

1. A maximum of $25,000.00 per month for fleet operation and maintenance hours up to 625 hours;

2. Fuel expenses would be borne by the ACT. Expenses incurred by the Operator had to be pre-approved by the ACT for reimbursement. Clause 2.4.3.4.

3. Despite this, based on its information or belief, FTPR incurred fuel expenses and billed them in full without them having been pre-approved by the ACT for reimbursement.

**5) Amendment 2008-000248-E:**

i. On September 30, 2013, FTPR and the ACT amended the Original Contract (2008-000248-E) with the purpose of extending the term of the original contract, on this occasion for an additional 21 months, until June 30, 2015 and expanding the scope of the works and services provided by FTPR as the Operator, including Metrobus I and Metro Express, and adding the Metro Urbano BRT System and "Your Connection" service.

ii. For such purposes, FTPR would provide drivers and mechanics for regular service of the established routes, as required by FTPR, and in instances such as special events, exhibitions or fleet demonstrations ("showcases").

iii. Additional compensation for this amendment without auction or any competitive government contracting process was agreed at $26,358,698.00 for the twenty-one (21) month extension. However, it is important to note that, when assessing the document attached to Amendment E, "First Transit Temporary Service Proposal", when the amounts were added up, according to the numbers included in said proposal, its total was equivalent to $30,124,227.30; i.e., about $4,000,000 more than what was budgeted and agreed upon in the language of Amendment E.

**6) Amendment 2008-000248-F:**

i.   On June 30, 2015, FTPR and the ACT amended the Original Contract (2008-000248-F) in order to again extend the term of validity of the Original Contract, on this occasion for an additional 3 years, until June 30, 2018, and to expand the scope of the works and services provided by FTPR as the Operator, including Metrobus I, Metro Express, the Metro Urbano BRT System and "Your Connection".

ii.  The additional compensation for this amendment without auction or any competitive government contracting process was agreed at $43,073,234.50.

iii. The compensation was changed to an hourly and fixed cost rate.

iv.  It included the installation and maintenance of GPS systems for buses without an auction or any competitive government contracting process for $600,000.00.

v.   It included a $100,000.00 item for vehicle signage.

vi.  In addition, the amendment included the <u>acknowledgment of a debt in the amount of $6,922,137.26</u> as of March 31, 2015, that there is a dispute in the amount of $655,464.24 and that FTPR submitted invoices totaling $2,638,774.46. Each of these items, based on information or belief, is alleged to correspond to services rendered outside the budget(s) set forth under the previous amendment(s) and payable under the terms and conditions of this amendment, which is prohibited.

vii. The ACT agreed to pay the amount of $2,500,000.00 monthly, which would be applied to the outstanding debt from the previous month's bill, and the difference would be paid to the oldest outstanding invoice.

**7)  Amendment 2008-000248-G:**

i.   On June 30, 2018, FTPR and the ACT amended the Original Contract (2008-000248-G) for the purpose of again extending the term of validity, on this occasion for an additional 2 years, until June 30, 2020.

ii.    Additional compensation for this amendment without auction or any competitive
government contracting process was agreed at $17,784,057.20, based on a financial
compensation of hourly rate, miles and fixed cost.

iii.    iii. The amendment reiterated FTPR's obligation to provide the ACT with usage
data, in order to access federal funds from the Federal Transit Administration
("FTA"). Furthermore, the parties were required to adhere to federal FTA
regulations and to provide the necessary data to be able to access FTA funds.

iv.    The amendment included the <u>recognition of a debt of $3,619,212.86</u> as of May 31,
2018 which, based on information or belief, is alleged to correspond to services
rendered outside the budget(s) set forth under the previous amendment(s) and
payable under the terms and conditions of this amendment, which is prohibited.

**8)    Amendment 2008-000248-H:**

i.    On June 30, 2020, FTPR and the ACT amended the Original Contract (2008-
000248-H) for the purpose of extending the term of validity, on this occasion for
an additional year, until June 30, 2021 and to provide for <u>an automatic extension
until June 30, 2022</u> in the event that the ACT does not state otherwise.

ii.    Additional compensation for this amendment without auction or any competitive
government contracting process was agreed at $19,409,185.45, based on a financial
compensation of hourly rate, miles and fixed cost. Furthermore, it added an option
of $1,086,789.31 in the event of additional social distancing, for a new cap of
$20,495,975.18.

iii.    It added penalty clauses for services not provided, demonstrating that the ACT was
having problems with the Operator.

iv.    They established a station as a checkpoint to validate that the contracted services
were being provided (although $600,000.00 had been paid for these purposes for
the GPS system in Amendment F).

v.    An annex with "FTA FLOWDOWN CLAUSES" was added, showing that the
applicable FTA regulation had not been complied with up to that point.

9)   **Amendment 2008-000248-I:**

     i.   On August 31, 2020, FTPR and the ACT amended the Original Contract (2008-000248-1) for the purpose of reaching a <u>settlement agreement on FTPR's claim for alleged unpaid invoices amounting to approximately $1.5 million</u>. The claim was settled for the amount of $496,475.78, which, based on information or belief, is alleged to correspond to services rendered outside the budget established under the previous amendment(s) and payable under the terms and conditions of this amendment, which is prohibited.

10)   **Amendment 2008-000248-J:**

     i.   On September 20, 2021, FTPR and the ACT amended the Original Contract (2008-000248-J) for the purpose of adding the new Dynamic Tollbooth from San Juan to Caguas and extending the service of the Metro Urbano from San Juan to Caguas and vice versa.

     ii.   The compensation for this amendment without auction or any competitive government contracting process was agreed at $12,032,330.57 <u>for a service that was already being provided</u> free of charge by another transportation company at that time.

11)   **Amendment 2008-000248-K:**

     i.   On February 18, 2022, FTPR and the ACT amended the Original Contract (2008-000248-K) for the purpose of assisting other agencies with transportation issues (i.e., the Maritime Transportation Authority).

     ii.   The additional compensation for this amendment without auction or any competitive government contracting process was agreed at $578,102.57.

49.   The compensation structure under the Original Contract 2008-000248, according to the award of Tender S-07-20, was predicated only on an initial cost of $1,247,330 for the start-up thereof (Article 4.7.1 of the Contract), plus vehicle costs and operating expenses for each year of the Contract (Article 4.1 to 4.1.7 of the Contract).

50.  However, despite this being the only compensation structure contracted, over the course of the various amendments mentioned above, the form and manner in which FTPR was to be compensated was modified to suit the convenience of said company; this was done without any additional auction or competitive process having been held, namely:

1) **Amendment A 2008-000248-A** provided for the sale of the buses to the ACT, but, in turn, FTPR continued to bill for the rental of the sold units whose ownership had passed to the ACT.

2) **Amendments 2008-000248-B, 2008-000248-C, and 2008-000248-D** introduced and modified the compensation of $9,000 weekly up to 375 miles and 200 hours weekly, plus 10% profit and/or $25,000 monthly plus 10% profit.

3) **Amendment 2008-000248-E** introduced and modified the compensation structure at fixed cost, plus cost per hours of service and cost per miles of service.

4) **Amendment 2008-000248-F** modified the compensation structure to fixed cost and hours of service only.

5) **Amendments 2008-000248-G, 2008-000248-H, 2008-000248-J, and 2008-000248-K** modified the compensation structure to fixed cost, plus cost per hours of service and cost per miles of service.

51.  From the different amendments mentioned herein, it can be seen that additional compensation elements were introduced in favor of FTPR that were not part of the Original Contract, without any additional auction or competition process having taken place, violating the parameters established in the Original Contract. These new structures were:

1) Profit from the sale of units to the ACT;

2) Profit from renting the same vehicles whose ownership had passed to the ACT;

3) Profit on cost: 10%;

4) Cost per hour of service ranging from $35.56 per hour to $74.33 per hour of service;

5) Cost per mile of service ranging from $1.38 per mile of service to $3.86 per mile of service;

6) Fixed costs ranging from $9,000 per week to $1,338,499.00 per month.

7) Transfer of FTPR's unit repair and maintenance costs and fuel cost to the ACT.

52.  With respect to **Amendment 2008-000248-E** (which was only valid for 21 months), the cost scheme is not related to or reconciled with the amounts established in Article 4.1.5.1 ($26,358,698.00) and the cost structure annex that accompanies the Amendment. Article 4.1.5.1.1 committed, for the first nine (9) months, the sum of $7,530,985, yielding a monthly average of $836,776.11. Article 4.1.5.1.2 committed, for the remaining twelve (12) months, the amount of $18,827,713, yielding a monthly average of $1,568,970.16.

53.  The cost structure addendum accompanying Amendment E established an increase in the Metrobus monthly rate, effective as of July 1, 2014, to $1,338,499 for the twelve (12) month item, as set forth in Article 4.1.5.1.2.

54.  Adding up the amounts, according to the numbers proposed in the cost structure annex accompanying the Amendment, the total under that amendment is $30,124,227.30.

55.  However, the figures pertaining to the first seven (7) months are not related to or reconciled with the contract requirements and what is established in the amendment annex.

56.  For illustrative purposes, see the following Comparative Analysis Table between the text of the contract versus the calculation tables for payments to be made:

| Amendment E Cost Analysis | | | |
|---|---|---|---|
| Contract Text | Months 1 to 9 | Months 10 to 21 | Contract Total |
| Annual Total | $ 7,530,985.00 | $18,827,713.00 | $26,358,698.00 |
| Monthly Average | $ 836,776.11 | $ 1,568,976.08 | |
| | | | |
| **Attachment - Table of Cost Details** | | | **VS.** |
| Monthly | Months 1 to 9 | Months 10 to 21 | |
| Metro Urbano + Your Connection | $ 230,471.16 | $ 230,471.16 | |
| Metrobus | $ 1,024,705.00 | [redacted] | |
| Subtotal | $ 1,255,176.16 | $ 1,568,970.16 | |
| Total | **$11,296,585.44** | **$18,827,641.92** | **$30,124,227.36** |

| Analysis of Differences in Amendment E Costs | | | |
|---|---|---|---|
| Contract Text | Months 1 to 9 | Months 10 to 21 | Contract Total |
| Annual Total | $ 7,530,985.00 | $18,827,713.00 | $26,358,698.00 |
| | | | |
| Attachment - Cost Detail Table | | | |
| Annual Total | $11,296,585.44 | $18,827,641.92 | $30,124,227.36 |
| | | | |
| Difference | | | |
| Annual Total | $ 3,765,600.44 | $ (71.08) | [redacted] |

57.  As can be inferred from the details of the Amendments to the Original Contract, a large part of the amounts invoiced and collected were improper because they were services provided prior to the presentation of the corresponding amendments in contravention of the regulations applicable to government contracting. In several instances, the amendments to the Original Contract agreed upon

without the benefit of any competitive government procurement or auction process, insofar as they provide for acknowledgments of debt, based on information or belief, are alleged to serve as a cover for the payment for services rendered outside of the contract either because they had not been established under the previous amendment(s) or because they represented amounts that exceeded those agreed upon in said previous amendment(s).

### C. *Financial Statements and Reports Required by the Contract*

58. On the other hand, Section 2.5.2 of the Original Contract shows that the Operator, understood as FTPR, committed and agreed that, during the term of the Contract, it would periodically submit several documents to the ACT, including Preliminary Quarterly Financial Statements (2.5.2.10) and Audited Annual Financial Statements (2.5.2.11).

59. In fact, that same provision stipulated that **FTPR's failure to file or the late filing of these documents on more than two (2) consecutive occasions would constitute a breach of contract and would be sufficient cause for the suspension of processing of any submitted invoice. (Emphasis Supplied).**

60. Notwithstanding the foregoing, based on information or belief, it is alleged that FTPR did not comply in a timely manner with the obligation to submit its own financial statements during the term of the contract or for the respective amendments that were granted. Even so, it continued to bill and collect under the terms of the aforementioned service contract, which equates to a false or fraudulent claim for the purpose of Act No. 154-2018.

61. Furthermore, Article 5.5 of the Original Contract establishes as grounds for breach any material adverse change in FTPR's financial condition.

62. However, FTPR's Financial Statements and Balance Sheets from 2010 to 2021 show that from 2011 onwards there was a significant adverse change in its cash balance. Specifically, these statements reflect a reduction from approximately $226,000.00 in cash to just $1,000.00. This is despite the fact that the Original Contract with the ACT establishes FTPR's obligation to notify the ACT of any change in its financial position, and FTPR did not report this. See Section 5.5.1.1 of the Original Contract.

63. This posed a significant risk to the Government, as it had a company operating a $15,000,000 annual contract for public transportation services, despite having such a deficient and negligible cash flow as that reported in its Financial Statements.

64. It posed such a risk that the Supreme Court of Puerto Rico recently reversed the award of RFP S-23-08 by the ACT in favor of FTPR, precisely because the latter entity only submitted the financial statements of its parent company, and not its own. See *Transport Sonell, LLC v. Board of Auctions of the Puerto Rico Highway and Transportation Authority, First Transit PR, Inc.,* 2024 TSPR 82 (res. of July 24, 2024).

65. In so resolving, the highest court highlighted the following in that case:

A search of the Department of State's Corporation Register allows us to note that First Transit PR had the following financial situation:

|      | Assets | Liabilities | Equity |
|------|--------|-------------|--------|
| 2019 | $18,291,129 | $2,125,574 | $16,165,555 |
| 2020 | $18,537,355 | $2,150,137 | $16,387,218 |
| 2021 | $19,296,768 | $2,997,017 | $16,299,751 |
| 2022 | $17,774,879 | $2,057,607 | $14,717,272 |

**With assets that have not exceeded $20,000,000 in recent years, we have serious doubts as to whether First Transit PR has the capacity to handle a Contract like the one being auctioned here, which exceeds $50,000,000.***Ibid.,* pg 28 (emphasis provided).

66. Undoubtedly, the same reasoning adopted by the Supreme Court to express its doubts regarding FTPR's financial capacity is equally applicable to the Original Contract and subsequent amendments, which even exceeded that sum of $50,000,000.00.

67. Worse yet, the invoices and other documentation that the defendant has submitted to the Government in order to obtain remuneration under this service contract, based on incorrect information and without complying with the terms of the contract itself, constitute fraudulent claims under the provisions of Act No. 154-2018, known as the False Claims to Government of Puerto Rico Programs, Contracts, and Services Act, 32 LPRA § 2931 et seq., (hereinafter "Act No. 154-2018").

68. As if this were not enough, the ACT issued RFP S-23-08 in 2022, which was awarded to FTPR, and said company was contracted again. However, as a result of the legal claim brought by another participant in said RFP, the ACT was forced to cancel the contract awarded to FTPR in light of the ruling issued by the Supreme Court of Puerto Rico. Thus, it was confirmed that FTPR should have been disqualified and, in turn, it can be concluded that said contract should be considered null and void *ab initio*.

## V.    CAUSES OF ACTION AND REMEDIES REQUESTED

*First Cause of Action: Qui Tam Claim, Act No. 154-2018*

69.  Messo LLC, as Relator, adopts and incorporates by reference all allegations and causes of action previously and/or subsequently alleged in the Complaint for all legal purposes that may be relevant.

70.  Article 4.01(1) of Act No. 154-2018 provides, in its relevant part, that any person who

> a.    Knowingly submits or causes the submission of a false or fraudulent claim for payment for the approval of benefits under any Government Program, including the Puerto Rico Medicaid Program; **or based on a service contract**;
>
> b.    Knowingly makes, uses, or causes to be made or used a false record or statement that is material, in order to submit a false or fraudulent claim under any Government Program, including the Puerto Rico Medicaid Program, **or based on a service contract;**
> c.  Conspires to commit a violation of subsections 1(a) and 1(b) of this Article...
>
> They will be subject to paying the Government a civil penalty of not less than eleven thousand, one hundred and eighty-one dollars ($11,181), but not more than twenty-two thousand, three hundred and sixty-three dollars ($22,363) ...In addition to this civil penalty, they will be subject to payment of three (3) times the amount of damages received by the Government as a result of those fraudulent acts.

71.  Since it is reasonably estimated that the public funds illegally billed and collected by the Defendants from the ACT through this scheme amount to at least fifty million dollars ($50,000,000.00), it is requested that, in restitution of the defrauded public funds (under the provisions of Law 154-2018 or any other applicable statute), the defendants be jointly and severally ordered to pay the full amount of all sums improperly collected from the Government of Puerto Rico, in addition to payment of a sum equal to three (3) times the damage suffered by the Government as a result of these fraudulent acts and the payment of the civil penalties provided by the special statute invoked herein, consisting of a sum not less than $11,181.00 but not more than $22,363.00 for each violation incurred.[1]

72.  The damages suffered by the Government of Puerto Rico, which are estimated at over fifty million dollars ($50,000,000.00), include the excess cost of all amendments to the Original Contract that were granted to add routes and other services without an auction, RFP or RFQ, for which reason it could not be verified whether the prices invoiced by FTPR remained competitive in the market.

73.  Finally, these damages also include all sums of public funds that FTPR collected illegally or improperly in breach of the rules applicable to government contracting in Puerto Rico and/or the terms of the Contract itself (including the contractual duty to submit Preliminary Quarterly Financial Statements

---

[1] As a matter of law, these penalties will be automatically adjusted each year in accordance with the provisions of the *Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.*

and Audited Annual Financial Statements for FTPR in order for any collection, invoice or claim to the ACT to apply under the contract).

74. The appearing Relator alleges and affirmatively claims the maximum compensation allowed by Act No. 154-2018, as well as the payment by the Defendants of the costs and expenses of the litigation and the sum provided by the aforementioned special statute for attorney's fees.

_Second Cause of Action or Alternative Remedy: Improper Collection_

75. Messo LLC, in its capacity as Relator, adopts and incorporates by reference all allegations and causes of action previously and/or subsequently alleged in the Complaint for all legal purposes that may be relevant.

76. The doctrine on undue payment is set forth in Art. 1520 of the Civil Code of Puerto Rico, which establishes that "[a]nyone who, without legal cause, has made a payment for a thing or an amount that was not owed, has the right to demand its restitution from the receiver… ". 31 LPRA sec. 10751.

77. According to this principle, anyone who mistakenly pays something that is not owed has a legal recourse to demand the return of the payment, regardless of whether the error is one of fact or of law.

78. For many years, the rule was that in the case of an error of law, the return of the unduly paid amount was not warranted, but if the error was deemed to be one of fact, the obligation to return the payment arose. This reasoning came to an end in _ELA v. Crespo Torres_, 180 DPR 776 (2011), a decision in which it was established "that when something is received that there was no right to collect and that has been delivered in error, whether by error of fact or law, the duty to return it arises."

79. On the other hand, the Constitution of Puerto Rico establishes that "[p]ublic properties and funds shall only be disposed of for public purposes and for the maintenance and operation of the institutions of the State, and in all cases by authority of law." Art. VI, Sec. 9, Const. PR., LPRA, Volume

80. For this reason, government contracting is of the highest public interest, as it involves the use of government assets or funds. _Demeter International, Inc. v. Secretary of Finance,_ 199 DPR 706 (2018); CFSE v. Union of Physicians, 170 DPR 443 (2007). Under this constitutional mandate, the Supreme Court has been consistent in demanding the ethical and appropriate managing of public funds. _Vicar Builders v._

*ELA et al.,* 192 DPR 256 (2015); *Rodriguez Ramos et al. v. ELA et al.,* 190 DPR 448 (2014); *Jaap Corp. v. Dept. of State et al.,* 187 DPR 730 (2013). As a result, by constitutional imperative the State is obliged to manage public funds with the utmost diligence, protected by the highest ethical and fiduciary principles. *Jaap Corp. v. Department of State et al., supra, p.* 739.

81. The State's interest in restrictively regulating that type of contracting is aimed at "avoiding favoritism, corruption, waste, prevarication, extravagance, carelessness and the risks of non-compliance." *Vicar Builders* v. *ELA,* 192 D.P.R. 256, 263 (2015); *Alco Corp. v. Mun. de Toa Alta183* D.P.R. 530, 536–37 (2011); *Hatton v. Mun. de Ponce.*, 134 D.P.R. 1001, 1005, (1994).

82. In concordance with the foregoing, Government contracts must strictly comply with the requirements of: (1) being set down in writing; (2) maintaining a faithful record to establish their existence *prima facie;* (3) sending a copy to the Office of the Comptroller for a secondary record of their issuance, terms and existence, and (4) proving that they were made and granted 15 days prior. *Vicar Builders v. ELA et al.,* supra, p. 264; Act No. 237-2004, Act to Establish Uniform Parameters in the Contracting Processes of Professional and Consulting Services for Governmental Agencies and Entities of the ELA, as amended, 3 LPRA sec. 8613.

83. In fact, it has been established in our legal system that a contract between a private party and a government entity that does not comply with the applicable provisions of the Civil Code and, furthermore, with the special laws that impose tax controls and additional requirements on government contracting, **will be null and void.***Rodríguez Ramos et al. v . ELA et al., supra.* See also Act No. 18 of 1975, as amended, known as the Contract Records Act, 2 LPRA sec. 97 *et seq.*

84. This includes any instance of retroactive contracting, as such a practice restricts the public function and policy of protecting and safeguarding the allocation of public funds and, in turn, impedes compliance with the scrutiny process for awarding government contracts. *Jaap Corp. v. Dept. of State, supra,* p. 748.

85. Consequently, contracts with the State cannot be retroactive since, in order to offer any service, it is imperative that they are set down in writing prior to the granting of any provision or exchange of goods and services. *Vicar Builders v. ELA, supra*, pp. 265-266. This is because "endorsing the actions of the parties would, in this particular case, entail giving a retroactive effect to an act that did not occur as actually stated in the contract." *Alco Corp. v. Mun. de Toa Alta., supra,* p. 544.

86.   In short, the Supreme Court has reiterated that "when something is received that there was no right to collect and that has been delivered in error, whether by error of fact or law, the duty to return it arises." ELA v. Crespo Torres, supra, pp. 798-99.

87.   Finally, the applicable legal regulations in Puerto Rico expressly prohibit the disbursement of public funds for the payment of services that have been provided to the Government without the existence of a duly formalized and valid contract at the time of the service provision. Likewise, payment for items or amounts exceeding those previously stipulated in the corresponding contract is prohibited. This provision responds to the principles of budget legality and fiscal responsibility enshrined in the Constitution of the Commonwealth of Puerto Rico, Act No. 230 of July 23, 1974, as amended (Government Accounting Act), and the jurisprudence of the Supreme Court of Puerto Rico, which has repeatedly upheld that **the State cannot be validly bound outside the terms of a previously executed contract, and that retroactive payment for services without a contract or in excess of what was agreed is invalid**. In this regard, any supplier or contractor assumes the risk of non-payment for any service provided **before the effective date of the contract or above the authorized contractual obligations,** without entailing the right to any claim, reimbursement or compensation against the State.

88.   The allegations set out in the previous paragraphs demonstrate that the contracts granted between FTPR and the ACT did not comply with the formalities and requirements applicable to government contracting, since it was amended on multiple occasions without an auction, RFP or RFQ, despite this contravening the regulations applicable to that type of government contracting.

89.   Worse yet, the above allegations demonstrate an improper collection scheme for bus rental after their ownership was transferred from FTPR to the ACT, which amounts to approximately eleven million, five-hundred thousand dollars ($11,500,000.00).

90.   On the other hand, FTPR incurred fuel expenses and invoiced them in full, although these had not been pre-approved by the ACT for reimbursement, as required by the contract itself for their billing and payment.

91.   In turn, it also follows from the foregoing allegations that FTPR improperly collected from the ACT a substantial amount of public funds under a contract with retroactive effect, despite that type of contract suffering from absolute nullity in the government context.

92.  Specifically, Amendment 2008-0002348-A for the purchase of 20 buses for the sum of $6,348,545.56 was granted on July 10, 2010, while the operation recorded in that legal transaction took effect retroactively, on December 15, 2009.

93.  Furthermore, FTPR improperly collected substantial amounts of public funds without the timely submission of its Quarterly Preliminary Financial Statements, Audited Annual Financial Statements, and other documentation required by the Original Contract as a condition for the payment of any invoice or claim.

94.  Furthermore, despite the ruling of the Supreme Court of Puerto Rico, which became final and binding on November 8, 2024, and which determined that First Transit should have been disqualified from RFP S-22-24, as of the date of this lawsuit, First Transit continues to charge for services provided under a contract resulting from said RFP that, by all accounts, is illegal and void.

95.  Therefore, and in accordance with the doctrine on undue payment and the rulings of the Supreme Court in this regard, and as an alternative remedy requested under Rule 6.1(2) of Civil Procedure, 32 LPRA Ap. V, this Honorable Court is requested to order FTPR to reinstate and return to the treasury all amounts improperly charged to the ACT under the Original Contract and subsequent amendments, amounting to an approximate sum of eighty-five million dollars ($85,000,000.00).

**BY VIRTUE OF THE FOREGOING,** it is respectfully requested that this Complaint be declared admissible and, consequently:

1.  That the defendants be ordered, in recovery of the defrauded public funds and in *Qui Tam* claim, to pay no less than $11,181.00 and no more than $22,363.00 in fines for each false or fraudulent claim filed by FTPR for the illegal and/or improper collection of public funds; as well as the restitution of all public funds illegally and/or improperly collected by FTPR to the Government of Puerto Rico and the damages caused by such collection, which is estimated at a sum no less than eighty-five million dollars ($85,000,000.00); and three (3) times the damages suffered by the Government of Puerto Rico due to the actions and omissions of the defendants, in accordance with Act 154-2018 and any other applicable legal provision;

2.   That the appearing Relator be granted the maximum compensation permitted by Act No. 154-2018;

3.   That the appearing Relator be granted the costs, expenses, and attorneys' fees pursuant to Act 154-2018;

4.   Alternatively, and in accordance with the doctrine on undue payment and the Supreme Court's pronouncements on the matter, this Honorable Court is requested to order FTPR to restore and return to the public treasury all amounts unduly collected from the ACT under the Original Contract and subsequent amendments, which amount to approximately one hundred and fifty million dollars ($150,000,000); and

5.   Issue any other order or remedy that it deems appropriate by Law and/or equity.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today, August 11, 2025.

**signed Carlos J. Sagardía Abreu**
RUA 17227
**STRATEGIA LEGALE LLC**
1353 Luis Vigoreaux Ave. PMB 678
Guaynabo, Puerto Rico 00966
(787) 360-7924
cjsa@strategialegalepr.com

**signed Alfonso S. Martínez Piovanetti**
RUA 16726
PO Box 8013
San Juan, Puerto Rico 00910
(787) 234-6239
alfonso@martinezpiovanetti.com