

## Service of Process Transmittal Summary

**TO:**  ANDREW PUGH
FirstStudent Inc
191 ROSA PARKS ST FL 8
CINCINNATI, OH 45202-2573

**RE:**  **Process Served in Delaware**

**FOR:**  FIRSTGROUP INTERNATIONAL, INC.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | GOBIERNO DE PUERTO RICO ex rel., MESSO LLC PARTE DEMANDANTE vs. FIRST TRANSIT OF PUERTO RICO, INC. |
| **CASE #:** | SJ2025CV7134 |
| **PROCESS SERVED ON:** | The Corporation Trust Company, Wilmington, DE |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/09/2026 at 14:47 |
| **JURISDICTION SERVED:** | Delaware |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  ANDREW PUGH  andreww.pugh@firststudentinc.com |
| | Email Notification,  Amy Pucke  amy.pucke@firststudentinc.com |
| | Email Notification,  Jen Lorenz  jen_lorenz@gbtpa.com |
| | Email Notification,  Leanne Nieberding  leanne.nieberding@firststudentinc.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Trust Company |
| | 1209 Orange Street |
| | Wilmington, DE 19801 |
| | 8775647529 |
| | MajorAccountTeam2@wolterskluwer.com |
| **REMARKS:** | We cannot complete the transmittal because the attached documents are in a foreign language. We are forwarding as process so that you can determine next steps. |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:** Fri, Jan 9, 2026

**Server Name:** Kevin Dunn

| | |
|---|---|
| Entity Served | FIRSTGROUP INTERNATIONAL, INC. |
| Case Number | SJ2025CV7134 |
| Jurisdiction | DE |

| Inserts | | |
|---|---|---|
| | | |



Formulario OAT 1721
(Rev. Agosto 2023)

Página 1 de 3

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

GOBIERNO DE PUERTO RICO EX REL., MESSO LLC
**Parte Demandante**

v.

FIRST TRANSIT OF PUERTO RICO, INC.  Y OTROS
**Parte Demandada**

Caso Núm. SJ2025CV07134

Salón Núm. _____603_____

Acción Civil de: RECLAMACIONES FRAUDULENTAS A LOS
PROGRAMAS, CONTRATOS Y SERVICIOS DEL
GOBIERNO (LEY NÚM. 154-2018)

**EMPLAZAMIENTO**

ESTADOS UNIDOS DE AMERICA, SS
EL PRESIDENTE DE LOS ESTADOS UNIDOS
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO

**A: FIRSTGROUP INTERNATIONAL, INC.**
CORPORATION TRUST CENTER 1209, ORANGE ST WILMINGTON, DELAWARE, ESTADOS UNIDOS 19081

POR LA PRESENTE se le emplaza para que presente al tribunal su alegación responsiva dentro de los 60 días de haber sido diligenciado este emplazamiento, excluyéndose el día del diligenciamiento. Usted deberá presentar su alegación responsiva a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://www.poderjudicial.pr/index.php/tribunal-electronico/, salvo que el caso sea de un expediente físico o que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la Secretaría del Tribunal y notificar copia de la misma al (a la) abogado(a) de la parte demandante o a ésta, de no tener representación legal. Si usted deja de presentar su alegación responsiva dentro del referido término, el tribunal podrá dictar sentencia en rebeldía en su contra y conceder el remedio solicitado en la demanda, o cualquier otro, si el tribunal, en el ejercicio de su sana discreción, lo entiende procedente. Además, se le apercibe que, en los casos al amparo de la Ley Núm. 57-2023, titulada Ley para la Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores, entre los remedios que el Tribunal podrá conceder se incluyen la ubicación permanente de un (una) menor fuera de su hogar, el inicio de procesos para la privación de patria potestad, y cualquier otra medida en el mejor interés del (de la) menor. (Artículo 33, incisos b y f de la Ley Núm. 57-2023). Se le advierte de su derecho a comparecer acompañado(a) de abogado(a) en los casos que proceda.

Nombre del Abogado: Alfonso S. Martínez Piovanetti
RUA: 16726
Dirección: PO Box 8013, SAN JUAN, PUERTO RICO, PUERTO RICO, 00910
Tel: 7872346239 / Fax: 7877243535
Correo Electrónico: alfonso@martinezpiovanetti.com

Expedido bajo mi firma y sello del Tribunal, el ___2___ de ___DICIEMBRE___ de ___2025___ .

_Griselda Rodríguez Collado_
Nombre del (de la)
Secretario(a) Regional

Por: ___Loraine Rosado Pérez___
Nombre del (de la)
Secretario(a) Auxiliar del Tribunal

Firma del (de la)
Secretario(a) Auxiliar del Tribunal

SJ2025CV07134 02/12/2025 11:24:15 a.m. Página 2 de 3

Formulario OAT 1721                                                           Página 2 de 3
(Rev. Agosto 2023)

Caso Núm. **SJ2025CV07134**

## CERTIFICADO DE DILIGENCIAMIENTO POR EL (LA) ALGUACIL

Yo, _____ Alguacil del Tribunal de Primera Instancia de Puerto Rico, Sala de _____ .

CERTIFICO que el diligenciamiento del emplazamiento y de la demanda del caso de referencia fue realizada por mí, el _____ de _____ de _____, a las _____ ☐ a.m. ☐ p.m., de la siguiente forma:

☐   Mediante entrega personal a la parte demandada en la siguiente dirección física:
_____

☐   Accesible en la inmediata presencia de la parte demandada en la siguiente dirección física:
_____

☐   Dejando copia de los documentos a un(a) agente autorizado(a) por la parte demandada o designada por ley para recibir emplazamientos en la siguiente dirección física:
_____

☐   No se pudo diligenciar el emplazamiento personalmente debido a que:
_____
_____

En _____, Puerto Rico, el _____ de _____ de _____ .

_____          _____
Nombre del (de la) Alguacil Regional          Nombre del (de la) Alguacil de Primera Instancia
                                              y Número de Placa

                                              _____
                                              Firma del (de la) Alguacil de Primera Instancia

## DILIGENCIAMIENTO DEL EMPLAZAMIENTO POR PERSONA PARTICULAR

Yo, _____, declaro tener capacidad legal conforme la Regla 4.3 de Procedimiento Civil de Puerto Rico, y certifico que el diligenciamiento del emplazamiento y de la demanda del caso de referencia fue realizado por mí, el _____ de _____ de _____ , de la siguiente forma:

☐   Mediante entrega personal a la parte demandada en la siguiente dirección física:
_____

☐   Accesible en la inmediata presencia de la parte demandada en la siguiente dirección física:
_____

☐   Dejando copia de los documentos a un(a) agente autorizado(a) por la parte demanda o designada por ley para recibir emplazamientos en la siguiente dirección física:
_____

☐   No se pudo diligenciar el emplazamiento personalmente debido a que:
_____
_____

### COSTOS DEL DILIGENCIAMIENTO: $ _____

### DECLARACIÓN DEL (DE LA) EMPLAZADOR(A)

Declaro bajo pena de perjurio, conforme a las leyes del Estado Libre Asociado de Puerto Rico, que la información provista en el diligenciamiento del emplazamiento es verdadera y correcta.

Y PARA QUE ASÍ CONSTE, suscribo la presente en _____ , Puerto Rico, el _____ de _____ de _____ .

_____          _____
Firma del (de la) emplazador(a)               Dirección del (de la) emplazador(a)

AFFIDÁVIT NÚM. _____ [en caso de ser juramentado ante un(a) notario(a)]

Jurado(a) y suscrito(a) ante mí por _____ , de las circunstancias personales anteriormente mencionadas, a quien doy fe de conocer

_____
(conocimiento personal o, en su defecto, la acreditación del medio supletorio provisto por la Ley Notarial)

En _____ , Puerto Rico, el _____ de _____ de _____ .

                                    Por: _____
_____          _____
Nombre del (de la) Notario(a) o               Nombre del (de la)
Secretario(a) Regional                        Secretario(a) Auxiliar del Tribunal

                                              _____
                                              Firma del (de la)
                                              Secretario(a) Auxiliar del Tribunal

Formulario OAT 1721
(Rev. Agosto 2023)

Página 3 de 3

**SJ2025CV07134**

Caso Núm. _____

### DILIGENCIAMIENTO BAJO LEY NÚM. 57-2023

Yo, _____, certifico que el diligenciamiento del emplazamiento y de la
demanda del caso de referencia fue realizado por mí, el ____ de _____ de _____ ,
de la siguiente forma:

☐   Mediante envío a la parte demandada por correo electrónico a la siguiente dirección:

_____

☐   Mediante envío a la parte demandada por correo regular a la siguiente dirección:

_____

### DECLARACIÓN DEL (DE LA) EMPLAZADOR(A)

Declaro bajo pena de perjurio, conforme a las leyes del Estado Libre Asociado de Puerto Rico, que
la información provista en el diligenciamiento del emplazamiento es verdadera y correcta.
Y PARA QUE ASÍ CONSTE, suscribo la presente en _____ , Puerto Rico, el ____
de _____ de _____ .

_____        _____
   Firma del (de la) emplazador(a)              Dirección del (de la) emplazador(a)

AFFIDÁVIT NÚM. _____ [en caso de ser juramentado ante un(a) notario(a)]
      Jurado(a) y suscrito(a) ante mí por _____ ,
de las circunstancias personales anteriormente mencionadas, a quien doy fe de conocer

_____
   (conocimiento personal o, en su defecto, la acreditación del medio supletorio provisto por la Ley Notarial)
En _____ , Puerto Rico, el _____ de _____ de _____ .

                                                    Por: _____
_____                        _____
Nombre del (de la) Notario(a) o                          Nombre del (de la)
   Secretario(a) Regional                          Secretario(a) Auxiliar del Tribunal

                                                    _____
                                                       Firma del (de la)
                                                    Secretario(a) Auxiliar del Tribunal



**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA DE SAN JUAN**

| | |
|---|---|
| GOBIERNO DE PUERTO RICO *ex rel.*, MESSO LLC<br><br>**PARTE DEMANDANTE**<br><br>v.<br><br>FIRST TRANSIT OF PUERTO RICO, INC.; FIRST TRANSIT INC.; FIRST TRANSIT TRANSPORTATION, LLC; FIRST TRANSIT PARENT, INC.; FIRSTGROUP AMERICA, INC. (FGA); FIRSTGROUP AMERICA HOLDINGS, INC.; FIRSTGROUP INTERNATIONAL , INC.; FIRST STUDENT PARENT, INC.; FIRST STUDENT, INC.; FIRST STUDENT HOLDING COMPANY LLC; FIRST STUDENT SERVICES LLC; FIRST STUDENT TRANSPORTATION LLC; FIRSTGROUP AMERICA PLC; RECESS HOLDCO LLC; TRANSDEV GROUP; TRANSDEV NORTH AMERICA, INC.<br><br>**PARTE DEMANDADA** | CIVIL NÚM.:<br><br>**SOBRE:** RECLAMACIÓN *QUI TAM* (LEY NÚM. 154-2018); COBRO DE LO INDEBIDO |

**DEMANDA *QUI TAM* BAJO SELLO**

**AL HONORABLE TRIBUNAL:**

    **COMPARECE** la parte demandante, Gobierno de Puerto Rico *ex rel.*, MESSO LLC, en calidad de delator *qui tam*, por conducto de la representación legal que suscribe, y muy respetuosamente, expone, alega y solicita:

## I. INTRODUCCIÓN

    La presente acción tiene el propósito fundamental de vindicar el uso adecuado de fondos públicos y recuperar cuantiosas sumas cobradas mediante un esquema de fraude de gran magnitud perpetrado por la parte demandada contra la Autoridad de Carreteras y Transportación ("ACT") y el Gobierno de Puerto Rico. Como se explica detalladamente a continuación, por más de una década, la demandada First of Transit Puerto Rico, Inc. ("FTPR"), en aparente concierto y común acuerdo con las entidades afiliadas codemandadas, ha presentado reclamaciones falsas o fraudulentas con relación a un contrato de servicios para ciertas rutas de autobuses otorgado originalmente en el 2008. Dicho contrato se renovó en múltiples ocasiones durante este periodo mediante enmiendas que se otorgaron sin subasta u otro mecanismo de competencia, en ocasiones

con efectividad retroactiva y sin que tan siquiera tales enmiendas se registraran oportunamente en la Oficina del Contralor, según es requisito constitutivo para su validez. Todo ello en contravención a los principios más elementales aplicables a la contratación gubernamental en Puerto Rico y a los requerimientos del gobierno federal para los contratos de esta envergadura que se sufragan total o parcialmente con fondos federales.

Peor aún, la parte demandada ha incumplido sustancialmente con los términos específicos del propio contrato y ha incurrido en un patrón de brindar información incompleta, falsa o fraudulenta en los documentos presentados al Gobierno para lograr cobrar indebidamente cuantías sustanciales de fondos públicos. Consecuentemente, las facturas y otra documentación que la parte demandada ha remitido al Gobierno para obtener una remuneración por motivo de este contrato de servicio constituyen reclamaciones falsas o fraudulentas a tenor de lo dispuesto en la Ley Núm. 154 del 23 de julio de 2018, conocida como la *Ley de Reclamaciones Fraudulentas a los Programas, Contratos y Servicios del Gobierno de Puerto Rico*, 32 LPRA § 2931 et seq., (en adelante "Ley Núm. 154-2018").

Por tal razón, MESSO LLC comparece ante este Honorable Tribunal en nombre y beneficio del Gobierno de Puerto Rico y en calidad de Delator de un fraude, según lo autoriza la Ley Núm. 154-2018. La parte demandante ha obtenido, de manera independiente, evidencia que establece la comisión de violaciones al estatuto antes mencionado y, por ello, acude ante este Ilustre Foro en busca de los remedios contemplados por dicha ley o, en la alternativa, que se le restituya al Gobierno de Puerto Rico todos los fondos públicos que fueron cobrados indebidamente por la parte demandada.

Más aún, la parte demandante procura que este Ilustre Foro detenga el esquema de fraude de FTPR, el cual incluso continúa ejecutándose al día de hoy para el cobro indebido de fondos públicos. Este esquema ha ocasionado pérdidas al Estado que sobrepasan los Ochenta y Cinco $85 millones mediante un contrato de servicio, según enmendado en múltiples ocasiones, que no cumple con la normativa aplicable a la contratación gubernamental y que incluso pone en riesgo la seguridad y eficiencia de la transportación pública de nuestra Isla.

De hecho, FTPR continúa facturando y cobrando a la ACT por servicios brindados bajo el Contrato 2024-000163. Dicho contrato fue otorgado por la ACT tras la adjudicación del RFP S-22-24 con fecha de 12 de abril de 2022, la cual fue cuestionada en los tribunales y resultó objeto de sentencias validadas por el Tribunal Supremo de Puerto Rico por medio de las cuales se revocó

la adjudicación del RFP; se determinó que FTPR debió ser descalificada del RFP dado que había presentado estados financieros que no correspondían a la entidad licitadora; y se devolvió el caso a la agencia para los trámites subsiguientes. Más aún, tan recientemente como el pasado 9 de julio de 2025, según las ordenes emitidas por el Tribunal de Primera Instancia, la ACT se vio obligada a cancelar el contrato de servicios que habría sido otorgado bajo el RFP S-22-24 efectivo el 15 de agosto de 2025. Ante estas circunstancias, recabamos la intervención urgente y precisa de este Honorable Tribunal para vindicar el interés público y penalizar un fraude multimillonario en contra del Gobierno de Puerto Rico.

## II.    JURISDICCIÓN Y COMPETENCIA

Este Tribunal tiene jurisdicción y competencia para atender la causa de acción de epígrafe a tenor con las disposiciones de la Ley Núm. 201-2003, según enmendada, conocida como la "Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003", 4 LPRA sec. 24 et seq., y el Artículo 5.001 de la Ley Núm. 154-2018, 32 LPRA sec. 2935.

El Delator certifica so pena de perjurio que no obtuvo la información de parte de ninguna de las personas que tienen una prohibición de presentar una Demanda de conformidad con el Artículo 1.02(g) de la Ley Núm. 154-2018. A estos efectos, el Delator afirma y declara bajo juramento que es la fuente original de la información objeto de esta Demanda y que la misma fue el producto de su propia recopilación e investigación independiente. Se incluye la presente alegación informativa con el fin de darle estricto cumplimiento a los requisitos legales aplicables al amparo de la Ley 154-2018.

## III.    LAS PARTES

1.      La parte demandante y Delator, Messo LLC, es una compañía de responsabilidad limitada creada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico. Su dirección postal es PO BOX 10051 San Juan, PR 00908 y su número telefónico es 787-934-0805. La demandante comparece a este pleito en calidad de Delator, al amparo de las disposiciones de la Ley 154-2018, en beneficio y a nombre del Gobierno de Puerto Rico.

2.      La codemandada First Transit of Puerto Rico, Inc. ("FTPR"), es una corporación creada y organizada bajo las leyes del Estado de Delaware con número de registro 3660855. Su dirección física es Ochoa Building, 500 Calle de la Tanca, Suite 514, San Juan, PR, 00901.  Su dirección postal es PO Box 9022946, San Juan, PR, 00902-2946 y su número telefónico es 302-658-7581. Dicha entidad legal fue autorizada a realizar negocios en el Estado Libre Asociado de

Puerto Rico a partir del 26 de junio de 2003 y, según su Certificado de Autorización para hacer negocios en Puerto Rico, se proponían exclusivamente a operar sistemas de transporte público.

3.      La codemandada, First Transit, Inc., es una corporación creada y organizada bajo las leyes del Estado de Delaware con número de registro 727905. Su dirección es Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

4.      La codemandada, First Transit Transportation, LLC, es una compañía de responsabilidad limitada creada y organizada bajo las leyes del Estado de Delaware con número de registro 3712982. Su dirección es Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

5.      La codemandada, First Transit Parent, Inc., es una corporación creada y organizada bajo las leyes del Estado de Delaware con número de registro 5915216. Su dirección es Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

6.      La codemandada, FirstGroup America, Inc., (FGA) es una corporación creada y organizada bajo las leyes del Estado de Delaware con número de registro 3092878. Su dirección postal es Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

7.      La codemandada, FirstGroup America Holdings, Inc., (FGAH) es una corporación creada y organizada bajo las leyes del Estado de Delaware con número de registro 2230708. Su dirección es Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

8.      La codemandada, FirstGroup International, Inc., (FGAH) es una corporación creada y organizada bajo las leyes del Estado de Delaware con número de registro 3617098. Su dirección es Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

9.      La codemandada, First Student Parent, Inc., es una corporación creada y organizada bajo las leyes del Estado de Delaware con número de registro 5915198. Su dirección postal es Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

10.     La codemandada, First Student, Inc., es una corporación creada y organizada bajo las leyes del Estado de Delaware con número de registro 2020229. Su dirección es Corporation

Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

11.     La codemandada, First Student Holding Company LLC, es una compañía de responsabilidad limitada creada y organizada bajo las leyes del Estado de Delaware con número de registro 10217004.  Su dirección es Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

12.     La codemandada, First Student Services LLC, es una compañía de responsabilidad limitada creada y organizada bajo las leyes del Estado de Delaware con número de registro 2945707.  Su dirección es 251 Little Falls Drive, Wilmington, DE, 19808 y su número telefónico es 302-636-5401.

13.     La codemandada, First Student Transportation, LLC es una compañía de responsabilidad limitada creada y organizada bajo las leyes del Estado de Delaware con número de registro 3712974.  Su dirección es 251 Little Falls Drive, Wilmington, DE, 19808 y su número telefónico es 302-636-5401.

14.     La codemandada, FirstGroup America PLC, es una compañía pública limitada registrada en Escocia bajo el registro número 157176. Su dirección es 395 King Street, Aberdeen, United Kingdom, AB24 5RP y su número telefónico es +44 (0)1224 650100.

15.     La codemandada, Recess HoldCo, LLC, es una compañía de responsabilidad limitada creada y organizada bajo las leyes del Estado de Delaware con número de registro 5925533.  Su dirección es Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

16.     La codemandada, Transdev Group, es una compañía pública limitada registrada en Francia bajo el registro número 521 477 85. Su dirección es 3 Allée de Grenelle, 92442 Issy-les-Moulineaux, Francia.

17.     La codemandada, Transdev North America, Inc., es una corporación creada y organizada bajo las leyes del Estado de Delaware con número de registro 2983339. Dicha entidad opera como subsidiaria de Transdev Group. Su dirección es Corporation Trust Center 1209, Orange St., Wilmington, DE, 19081 y su número telefónico es 302-658-7581.

18.     First Student and First Transit son líneas de negocios de First Group PLC a la cual pertenecía First Transit PR, Inc.

19.     La codemandada Transdev North America, Inc., como parte de la adquisición de ciertas líneas de negocios de First Group PLC, adquirió recientemente a First Transit, Inc., y First

Transit of Puerto Rico, Inc., ("FTPR").

20.    Todas las codemandadas enumeradas en este pleito forman parte, directa o indirectamente, de la estructura corporativa, la cadena de control y/o las transacciones de sucesión empresarial relacionadas con First Transit of Puerto Rico, Inc. ("FTPR") y First Transit, Inc. En conjunto, estas entidades han operado bajo las líneas de negocio "First Transit" y "First Student" del conglomerado internacional *FirstGroup PLC* y sus filiales, ejerciendo control corporativo, dirección operativa, manejo financiero y/o recibiendo beneficios de las facturaciones y cobros indebidos que aquí se impugnan. Algunas de estas entidades, incluyendo *First Transit, Inc.*, comparecieron contractualmente como garantes corporativos de las obligaciones de FTPR; otras, como *FirstGroup America, Inc.*, *FirstGroup America Holdings, Inc.*, *FirstGroup International, Inc.*, *First Student Parent, Inc.*, *First Student, Inc.*, *First Student Holding Company LLC*, *First Student Services LLC* y *First Student Transportation LLC*, constituyen sociedades afiliadas a través de las cuales se manejaban activos, personal, ingresos y obligaciones comunes dentro del mismo grupo corporativo. Entidades como *Recess HoldCo LLC*, *Transdev Group* y *Transdev North America, Inc.* participaron en la adquisición, absorción o sucesión de las operaciones de *First Transit*, asumiendo o continuando su giro comercial y beneficiándose de los ingresos generados por los contratos aquí cuestionados. En virtud de su control, participación o aprovechamiento del esquema de contratación y facturación fraudulenta alegado, todas las codemandadas son solidariamente responsables de las reclamaciones instadas en esta Demanda.

## IV.    LOS HECHOS

21.    La Autoridad de Carreteras y Transportación ("ACT") es una corporación pública del Gobierno de Puerto Rico, y como tal, está comprendida dentro del alcance de la Ley Núm. 154-2018. 32 LPRA. Sec. 2931a(k).

22.    El 30 de junio de 2008, la ACT y First Transit of Puerto Rico, Inc., ("FTPR" o "First Transit Puerto Rico") otorgaron un contrato denominado SERVICE CONTRACT FOR THE OPERATION, MAINTENANCE AND MANAGEMENT OF METROBUS I AND METROBUS EXPRESS PUBLIC TRANSPORTATION ROUTES, registrado en el Registro de Contratos de la Oficina del Contralor como el Contrato Núm. 2008-000248 ("el Contrato Original").

23.    En ese Contrato Original, First Transit, Inc., –la entidad matriz de FTPR– compareció como garantizador corporativo para la ejecución y el pago de las obligaciones

contractuales incurridas en el referido negocio jurídico.

24.    La vigencia del Contrato Original, el cual fue producto de la Subasta S-07-20, era del 1 de octubre de 2008 al 30 de septiembre de 2013.

25.    Además, el alcance de los servicios del Contrato Original solo proveía para la operación y servicio de tres (3) rutas de autobuses con el propósito de suplir las necesidades de transportación pública en Puerto Rico, a saber: Metrobus IA, Metrobus IB y Metrobus Express (rutas Capetillo - Sagrado Corazón; Sagrado Corazón – Covadonga; expreso Luis Muñoz Rivera para proveer servicio expreso entre Sagrado Corazón a Covadonga).

26.    Mediante el referido Contrato Original, FTPR se obligó a operar y proveer el servicio de rutas de MetroBus I y MetroBus Express durante cinco (5) años por la suma total de $57,614,908.80, el cual podría ser aumentado a $59,183,909.00, además de hacer el "start-up" del sistema y alquilar las unidades para la operación del área este.

27.    Además, para poder iniciar la operación y los servicios pactados, FTPR le cobró a la ACT la cantidad de $1,247,330.00 para la implantación inicial –o "start up"– del mismo. Véase la Sección 4.7.1 del Contrato Original.

### A.    *Esquema de cobro indebido por renta de autobuses luego de que se traspasara su titularidad a la ACT*

28.    En lo pertinente a este caso y a la reclamación bajo la Ley Núm. 154-2018 y/o por el cobro indebido de fondos públicos, en el Contrato Original se especificó que FTPR era el único dueño de los 27 autobuses que se utilizarían para el servicio de rutas de MetroBus I y MetroBus Express.

29.    Particularmente, FTPR se obligó a proveer esos autobuses para operar las rutas objeto del contrato por unas cantidades especificadas en el contrato, lo que equivalió a un arrendamiento. Sin embargo, para la fecha de otorgación del Contrato Original, en contravención de la Sección 6.4, dicha entidad no contaba, ni cuenta a la fecha de esta reclamación, con las licencias requeridas para arrendar vehículos en Puerto Rico. Véase la Sección 2.6 y la Sección 6.4 del Contrato Original:

> 2.6.1 **Titularidad de los Autobuses**: El OPERADOR es el único propietario de veintisiete (27) de los autobuses que se utilizarán en las rutas Metrobus 1 y Metrobus Express, como se muestra en el Anexo E y en cualquier enmienda posterior al Anexo E realizada por el OPERADOR para incluir nuevos autobuses.
>
> El OPERADOR ha acordado con la PRHTA proveer veintisiete (27) autobuses para el servicio bajo este Contrato a más tardar el 30 de septiembre de 2008. En esa misma fecha, el OPERADOR deberá proporcionar a la PRHTA una lista de los autobuses que se entregarán, la cual deberá incluir sus respectivos números de serie. Esta lista se

incluirá en este Contrato como Anexo D. La operación, uso y mantenimiento de esos autobuses, y cualquier reemplazo y/o adición de autobuses por parte del OPERADOR, estarán regidos por los términos y condiciones de este Contrato (traducción suplida).

6.4 El Operador se compromete a obtener todos los permisos, aprobaciones, autorizaciones y licencias necesarios que exijan las agencias federales, estatales o municipales para este tipo de operación. Se compromete a cumplir con todas las leyes, ordenanzas y reglamentos fiscales, tributarios, laborales, ambientales o de seguridad (incluidas las inspecciones vehiculares), o de cualquier otra índole, vigentes o que se adopten o aprueben durante la vigencia de este contrato. Se asegurará de que todo el personal contratado o subcontratado que requiera licencias o cualquier otro permiso para ejercer su profesión u ocupación cumpla con las disposiciones legales aplicables.

30.    De hecho, según la Sección 4.1 del Contrato Original, los pagos del contrato incluían una partida mensual por el costo de alquiler de los vehículos y otra partida mensual por el costo de la operación del servicio. Tales pagos se desglosaron de la siguiente manera:

4.1.1 **Para el PRIMER año**, Costo de los Vehículos: $1,048,234 dólares, Costo de Operación: $7,200,000.00 dólares, pagados mensualmente de manera prorrateada.

4.1.2 **Para el SEGUNDO año**, Costo de los Vehículos: $2,125,304 dólares, Costo de Operación: $9,101,023 dólares, pagados mensualmente de manera prorrateada.

4.1.3 **Para el TERCER año**, Costo de los Vehículos: $2,125,304 dólares, Costo de Operación: $59,625,240 dólares, pagados mensualmente de manera prorrateada.

4.1.4 **Para el CUARTO año**, Costo de los Vehículos: $2,125,304 dólares, Costo de Operación: $10,373,233 dólares, pagados mensualmente de manera prorrateada.

4.1.5 **Para el QUINTO año**, Costo de los Vehículos: $2,125,304 dólares, Costo de Operación: $11,075,561 dólares, pagados mensualmente de manera prorrateada (traducción suplida).

31.    A su vez, en lo que los autobuses llegaban a Puerto Rico, FTPR le cobró a la ACT por el alquiler de 10 autobuses la cantidad de $558,149.54 mensuales durante un período de tres meses (julio, agosto y septiembre); lo que se traduce en una renta total de $1,674,448.62. (Sección 4.1.7 del Contrato). Sin embargo, para proveer el servicio de alquiler dicha entidad debía contar con una franquicia de vehículos de alquiler emitida por la antigua Comisión de Servicio Público, hoy denominada como el Negociado de Transporte y otros Servicios Públicos ("NTSP"). FTPR no posee dicha franquicia ni la poseía a la fecha en que prestó los servicios de arrendamiento, en contravención de la Sección 6.4 del Contrato Original, según puede ser corroborado en los registros públicos y récords gubernamentales de del NTSP.

32.    Ahora bien, el 8 de julio de 2010, se otorgó la primera enmienda al Contrato Original, conocida como la Enmienda 2008-0002348-A, con el único propósito de que FTPR le vendería a la ACT veinte (20) nuevos autobuses a utilizarse en las rutas cubiertas en el mismo contrato por la suma de $6,348,545.56. Sin embargo, para poder gestionar la venta de los vehículos a la ACT, dicha empresa debió tener vigente una Licencia de Concesionario de Vehículos de

Motor, Arrastres y Semiarrastres ("Licencia de Concesionario"). Esta licencia es expedida por el Secretario del Departamento de Transportación y Obras Públicas (DTOP) y requiere la presentación de una solicitud en el formulario autorizado. FTPR, en contravención con la Sección 6.4 del Contrato Original, no posee dicha Licencia de Concesionario ni la poseía a la fecha de la enmienda.

33.    Específicamente, se enmendó la Sección 2.6 antes citada del Contrato Original a los fines de establecer lo siguiente en cuanto a la titularidad de los autobuses:

> Efectivo al 15 de diciembre de 2009, la flota de vehículos que se utilizará para las rutas de Metrobus I y Metrobus Express consistirá en treinta (30) autobuses, incluidos veinte (20) autobuses nuevos comprados por el OPERADOR y diez (10) autobuses que han sido utilizados previamente por el OPERADOR y que son propiedad del OPERADOR. La flota de vehículos se identifica en el Anexo D-1, adjunto a este documento. EL OPERADOR transferirá el título de los veinte (20) autobuses nuevos en la flota que no son propiedad de la PRHTA a la PRHTA una vez que el OPERADOR reciba el pago de $6,348,545.56 por parte de la PRHTA por los veinte (20) autobuses nuevos. El pago se realizará en un solo pago global por parte de la PRHTA al OPERADOR, a más tardar el 30 de julio de 2010 (traducción suplida).

34.    A pesar de que esta enmienda cambió la titularidad de los vehículos de FTPR para traspasarla a la ACT, **en ese momento, <u>no se enmendó la estructura de pago</u> en el Contrato Original (Artículo 4.1 del Contrato) para eliminar el costo de vehículos por $2,125,304.00 anuales** (por concepto de una renta por arrendamiento de dichos vehículos que evidentemente ya no sería necesaria dado que los vehículos habrían pasado a ser propiedad de la ACT).

35.    Sin embargo, y de manera falsa o fraudulenta conforme a lo dispuesto en la Ley Núm. 154-2018, luego de arrendarle los autobuses sin contar con la franquicia requerida por la Comisión de Servicio Público, hoy día NTSP, y luego de venderle los autobuses a la ACT sin contar con la licencia requerida por el DTOP, FTPR continuó presentando facturas mediante las cuales cobró indebidamente la misma partida de renta de dichos vehículos bajo el Contrato Original por varios años adicionales luego de que la titularidad de dichos autobuses hubiese pasado a la ACT.

36.    Tales reclamaciones falsas o fraudulentas presentadas por la parte demandada, las cuales resultaron en el cobro indebido de fondos públicos, le provocaron al Gobierno de Puerto Rico una pérdida de aproximadamente sobre Diecisiete Millones Quinientos Mil Dólares ($17,500,000.00) conforme a un cálculo razonable basado en los documentos contractuales que obran en el Registro del Contratos del Contralor.

37.    Además, el Certificado de Incorporación de FTPR establece que dicha entidad fue organizada únicamente para la operación del sistema de transportación pública y no provee para

la operación de un negocio de alquiler o venta de vehículos de motor.

38.    Peor aún, FTPR no ostenta la licencia de arrendador ni de vendedor de vehículos en Puerto Rico para llevar a cabo estas actividades comerciales. Por lo tanto, FTPR no podía ni arrendar ni vender vehículos de motor.

39.    La ACT arrendó y compró a FTPR esos 20 vehículos de motor sin celebrar una subasta u otro mecanismo de competencia en el mercado según requieren las normas de contratación gubernamental que persiguen la sana administración de los fondos públicos.

40.    La compra y venta de esos 20 vehículos no era parte del Contrato Original ni de la subasta que dio paso al mismo.

41.    Finalmente, no se puede pasar por alto que **la Enmienda 2008-0002348-A se otorgó el 10 de julio de 2010, mientras que la transacción consignada en ese negocio jurídico se hizo efectiva de manera retroactiva, al 15 de diciembre de 2009.**

42.    Esto constituyó una contratación retroactiva que está vedada por las normas de contratación gubernamental en Puerto Rico y, por consiguiente, adolece de nulidad absoluta. Véanse *Rodríguez Ramos et al. v. ELA et al.*, 190 D.P.R. 448, 467 (2014) *Jaap Corp. v. Depto. Estado*, 187 D.P.R. 730 (2013); *Alco Corp. v. Mun. de Toa Alta*, 183 D.P.R. 530, 536–37 (2011).

43.    En consecuencia, tanto la porción de los fondos públicos correspondiente al alquiler de los vehículos de motor cobrados y recibidos por FTPR bajo el Contrato original, como también la totalidad de los fondos públicos cobrados y recibidos por la parte demandada en consideración de la referida Enmienda, no tan solo dieron lugar a unas reclamaciones falsas por parte de FTPR en concepto de la renta que fue pactada en el Contrato Original; sino que la totalidad de las prestaciones en virtud de un contrato con efectividad retroactiva fueron cobradas indebidamente tanto por concepto de la venta de los autobuses como por concepto de la renta de otros autobuses y servicios relacionados, por lo que procede la devolución total de los fondos públicos facturados y cobrados por FTPR al Gobierno de Puerto Rico.

### B. *Enmiendas y extensión del Contrato Original sin subasta*

44.    Posteriormente, y sin proceso competitivo alguno, la ACT continuó extendiendo el Contrato Original mediante múltiples enmiendas que se otorgaron sin subasta, "request for proposals" ("RFP") o "request for qualifications" ("RFQ"), tal como lo exige la normativa aplicable a la contratación gubernamental en Puerto Rico y a nivel federal bajo el 2 CFR § 200 (para un contrato que es pagado parcialmente con fondos federales).

45.    Al no celebrar una subasta, RFP o RFQ para la extensión de estos servicios, la ACT no tuvo oportunidad de verificar si los precios facturados por FTPR se mantenían competitivos en el mercado para los servicios provistos.

46.    A pesar de que el contrato debía ser pagado con fondos federales y que inicialmente se subastó para tres rutas específicas, la ACT añadió mediante estas enmiendas rutas adicionales sin subasta u otro mecanismo competitivo de contratación pública, lo que implicó un costo adicional de aproximadamente Ciento Treinta y Tres Millones de Dólares ($133,000,000.00).

47.    Además, al otorgar todas estas enmiendas al Contrato Original sin subasta, RFP o RFQ, el Gobierno de Puerto Rico sufrió daños sustanciales al no haber adquirido estos servicios conforme a un proceso competitivo de mercado. Tales daños se estiman razonablemente en al menos Veinticinco Millones de Dólares ($25,000,000.00).

48.    Específicamente, con respecto a las múltiples enmiendas realizadas al Contrato Original:

1) **Enmienda 2008-000248-A:**

    i. El 8 de julio de 2010, FTPR y la ACT enmendaron el Contrato Original (2008-000248-A) con el único propósito de que el primero le vende al segundo veinte (20) nuevos autobuses por la suma de $6,348,545.56.

    ii. **A pesar de que esta enmienda cambió la titularidad de los vehículos de FTPR a la ACT, no se enmendó la estructura de pago en el Contrato Original (Artículo 4.1 del Contrato) para eliminar el costo de vehículos por $2,125,304.00 anuales (renta que ya no sería necesaria).**

2) **Enmienda 2008-000248-B:**

    i. El 19 de octubre de 2011, FTPR y ACT enmendaron el Contrato Original (2008-000248-B) con el propósito de establecer un Sistema de Transportación Rápida de Autobuses ("Bus Rapid Transit System" o BRT por sus siglas en Inglés). A tales efectos, FTPR proveería los choferes y los mecánicos adiestrados a razón de:

        1. $9,000 semanales hasta 375 millas y 200 horas semanales, más un 10% de ganancia.

        2. Los gastos de combustible irían por cuenta de la ACT.

       ii.  Los daños en la operación de los autobuses serían cubiertos por la ACT salvo los causados por negligencia del Operador.

**3) Enmienda 2008-000248-C:**

       i.  El 4 de noviembre de 2012, FTPR y la ACT enmendaron el Contrato Original (2008-000248-C) con el propósito de que FTPR proveyera choferes y mecánicos para los autobuses adquiridos en la enmienda B que habrían de ser entregados a la ACT entre abril y agosto de 2012.

       ii.  La enmienda estableció que la misma no representa un aumento en la cuantía, ni en el término del Contrato Original, pero contempló nuevas rutas de servicio sin que se hubiere celebrado subasta pública alguna u otro mecanismo de competencia justa para la contratación.

**4) Enmienda 2008-000248-D:**

       i.  El 26 de diciembre de 2012, FTPR y la ACT enmendaron el Contrato Original (2008-000248-D) con el propósito de que FTPR proveyera choferes y mecánicos para unos nuevos autobuses que la ACT adquirió de la compañía Getaway de Florida, que a su vez eran usados como parte de un contrato entre Getaway y el Florida Department of Transportation, a razón de:

          1.  Un máximo de $25,000.00 mensuales por las horas de operación y mantenimiento de la flota hasta 625 horas;

          2.  Los gastos de combustible irían por cuenta de la ACT. Los incurridos por el Operador debían ser preaprobados por la ACT para reembolso. Cláusula 2.4.3.4.

          3.  A pesar de ello, por información o creencia FTPR incurrió en gastos de combustible y los facturó en su totalidad sin que estos hubiesen sido preaprobados por la ACT para reembolso.

**5) Enmienda 2008-000248-E:**

       i.  El 30 de septiembre de 2013, FTPR y la ACT enmendaron el Contrato Original (2008-000248-E) con el propósito de extender el término de vigencia del contrato original, en esta ocasión por 21 meses adicionales, hasta el 30 de junio de 2015 y expandir el alcance de los trabajos y

servicios provistos por FTPR como Operador; incluyendo Metrobus I, Metro Express y añadiendo el servicio de Metro Urbano BRT System y Tu Conexión.

ii. A tales efectos, FTPR proveería choferes y mecánicos para servicio regular de las rutas contempladas, según requerido por FTPR, y en instancias tales como eventos especiales, exhibiciones o demostraciones de las flotas ("showcases").

iii. La compensación adicional para esta enmienda sin subasta ni proceso competitivo de contratación gubernamental alguno se pactó en $26,358,698.00 por la extensión de los veintiún (21) meses. Sin embargo, es importante señalar que, al evaluar el documento que fue anejado a la enmienda E, "First Transit Temporary Service Proposal", al sumarse las cantidades, según los números incluidos en dicha propuesta, su total equivalía a $30,124,227.30; es decir, sobre $4,000,000 más a lo presupuestado y pactado en el lenguaje de la Enmienda E.

6) **Enmienda 2008-000248-F:**

i. El 30 de junio de 2015, FTPR y la ACT enmendaron el Contrato Original (2008-000248-F) con el propósito de extender nuevamente el término de vigencia del Contrato Original, en esta ocasión por 3 años adicionales, hasta el 30 de junio de 2018, y expandir el alcance de los trabajos y servicios provistos por FTPR como Operador; incluyendo Metrobus I, Metro Express, Metro Urbano BRT System y Tu Conexión.

ii. La compensación adicional para esta enmienda sin subasta ni proceso competitivo de contratación gubernamental alguno se pactó en $43,073,234.50.

iii. La compensación cambió a tarifa por hora y costo fijo.

iv. Se incluyó la instalación y mantenimiento de los sistemas GPS para los autobuses sin subasta ni proceso competitivo de contratación gubernamental alguno por $600,000.00.

v. Se incluyó una partida de $100,000.00 para la rotulación de los

vehículos.

vi. Además, la enmienda incluyó el <u>reconocimiento de una deuda por la cantidad de $6,922,137.26</u> al 31 de marzo de 2015, que hay una disputa por la cantidad de $655,464.24 y que FTPR sometió unas facturas que totalizan la cantidad de $2,638,774.46. Cada una de estas partidas, por información o creencia, se alega que corresponden a servicios prestados fuera del presupuesto establecido bajo la(s) enmienda(s) previa(s) y pagaderos bajo los términos y condiciones de esta enmienda lo cual está prohibido.

vii. La ACT se comprometió a pagar la cantidad de $2,500,000.00 mensuales; de los cuales se aplicaría a la deuda vigente de la factura del mes anterior, y la diferencia se estaría pagando a la factura más antigua que estuviese al descubierto.

7) **Enmienda 2008-000248-G:**

i. El 30 de junio de 2018, FTPR y la ACT enmendaron el Contrato Original (2008-000248-G) con el propósito de nuevamente extender el término de vigencia, en esta ocasión por 2 años adicionales, hasta el 30 de junio de 2020.

ii. La compensación adicional para esta enmienda sin subasta ni proceso competitivo de contratación gubernamental alguno se pactó en $17,784,057.20, a razón de una compensación económica de tarifa por hora, millas y costo fijo.

iii. La enmienda reiteró la obligación de FTPR a suministrar a la ACT la data sobre el uso, para poder tener acceso a fondos federales del Federal Transit Administration ("FTA"). Además, las partes se obligaron a adherirse a la reglamentación federal del FTA y proveer los datos necesarios para poder tener acceso a fondos FTA.

iv. La enmienda incluyó el <u>reconocimiento de una deuda de $3,619,212.86</u> al 31 de mayo de 2018 que, por información o creencia, se alega que corresponden a servicios prestados fuera del presupuesto establecido bajo la(s) enmienda(s) previa(s) y pagaderos bajo los términos y

condiciones de esta enmienda lo cual está prohibido.

8) **Enmienda 2008-000248-H:**

    i. El 30 de junio de 2020, FTPR y la ACT enmendaron el Contrato Original (2008-000248-H) con el propósito de extender el término de vigencia, en esta ocasión por un año adicional, hasta el 30 de junio de 2021 y proveer para una extensión automática hasta el 30 de junio de 2022 en caso de que la ACT no se expresara en contrario.

    ii. La compensación adicional para esta enmienda sin subasta ni proceso competitivo de contratación gubernamental alguno se pactó en $19,409,185.45, a razón de una compensación económica de tarifa por hora, millas y costo fijo.   Además, se le añadió una opción de $1,086,789.31 en caso de que haya distanciamiento social adicional; ello para un nuevo tope de $20,495,975.18.

    iii. Se añadieron cláusulas de penalidades por servicio no prestado, evidenciando que la ACT tenía problemas con el Operador.

    iv. Establecieron una estación como punto de cotejo para validar que se estuviesen brindando los servicios contratados (a pesar de que para estos propósitos se habían pagado $600,000.00 por el sistema de GPS en la Enmienda F).

    v. Se añadió un anejo con "FTA FLOWDOWN CLAUSES", evidenciando que no se había cumplido hasta el momento con la reglamentación aplicable del FTA.

9) **Enmienda 2008-000248-I:**

    i. El 31 de agosto de 2020, FTPR y la ACT enmendaron el Contrato Original (2008-000248-I) con el propósito de llegar a un acuerdo transaccional ante la reclamación de FTPR por supuestas facturas al descubierto ascendentes a $1.5 millones, aproximadamente.   Se transigió la reclamación por la cantidad de $496,475.78 que, por información o creencia, se alega que corresponden a servicios prestados fuera del presupuesto establecido bajo la(s) enmienda(s) previa(s) y pagaderos bajo los términos y condiciones de esta enmienda lo cual está

prohibido.

**10) Enmienda 2008-000248-J:**

    i.  El 20 de septiembre de 2021, FTPR y la ACT enmendaron el Contrato Original(2008-000248-J) con el propósito de añadir el nuevo Peaje Dinámico de San Juan a Caguas y extender el servicio del Metro Urbano de San Juan a Caguas y viceversa.

    ii.  La compensación de esta enmienda sin subasta ni proceso competitivo de contratación gubernamental alguno se pactó en $12,032,330.57 <u>para un servicio que va para ese entonces era</u> provisto por otra empresa de transporte de manera gratuita.

**11) Enmienda 2008-000248-K:**

    i.  El 18 de febrero de 2022, FTPR y la ACT enmendaron el Contrato Original (2008-000248-K) con el propósito de brindar asistencia a otras agencias con problemas de transporte (i.e. la Autoridad de Transporte Marítimo).

    ii.  La compensación adicional de esta enmienda sin subasta ni proceso competitivo de contratación gubernamental alguno se pactó en $578,102.57.

49.    La estructura de compensación bajo el Contrato Original 2008-000248, según la adjudicación de la Subasta S-07-20, estuvo predicada únicamente en un costo inicial de $1,247,330 para el "start up" del mismo. (Artículo 4.7.1 del Contrato), más costos de vehículos y gastos operacionales para cada año del Contrato. (Artículo 4.1 al 4.1.7 del Contrato).

50.    Sin embargo, a pesar de que esta era la única estructura de compensación contratada, durante las diferentes enmiendas antes reseñadas se fue modificando la forma y manera en que FTPR sería compensada a conveniencia de dicha empresa; ello sin que se hubiera celebrado subasta adicional alguna o proceso de competencia, a saber:

    1)  **La Enmienda A 2008-000248-A** proveyó para la venta de los autobuses a la ACT, pero, a su vez, FTPR continuó facturando por el alquiler de las unidades vendidas cuya titularidad había pasado a la ACT.

    2)  **Las Enmiendas 2008-000248-B, 2008-000248-C y 2008-000248-D** introdujo y modificó la compensación de $9,000 semanales hasta 375 millas y 200 horas

semanales, más un 10% de ganancia y/o $25,000 mensuales más el 10% de ganancia.

3) **La Enmienda 2008-000248-E** introdujo y modificó la estructura de compensación a costo fijo, más costo por horas de servicio y costo por millas de servicio.

4) **La Enmienda 2008-000248-F** modificó la estructura de compensación a solamente costo fijo y horas de servicio.

5) **Las Enmiendas 2008-000248-G, 2008-000248-H, 2008-000248-J y 2008-000248-K** modificó la estructura de compensación a costo fijo, más costo por horas de servicio y costo por millas de servicio.

51.    De las diferentes enmiendas aquí reseñadas se desprende que se fueron introduciendo elementos de compensación adicionales a favor de FTPR que no fueron parte del Contrato Original sin que se hubiera celebrado subasta adicional alguna o proceso de competencia, violando los parámetros establecidos en el Contrato Original. Estas nuevas estructuras fueron:

1)    Ganancia de la venta de unidades a la ACT;

2)    Ganancia por alquiler de los mismos vehículos cuya titularidad había pasado a la ACT;

3)    Ganancia sobre costo: 10%;

4)    Costo por hora de servicio que fluctúan entre $35.56 por hora hasta $74.33 por hora de servicio;

5)    Costo por milla de servicio que fluctúan entre $1.38 por milla de servicio hasta $3.86 por milla de servicio;

6)    Costos fijos que fluctúan entre $9,000 semanales hasta $1,338,499.00 mensuales.

7)    Transferencia de los costos de reparación y mantenimiento de las unidades y del costo del combustible de FTPR a la ACT.

52.    Con respecto a la **Enmienda 2008-000248-E** (la cual solo tenía una vigencia de 21 meses), el esquema de costos no guarda relación ni reconcilia con respecto las cantidades establecidas en el Artículo 4.1.5.1 ($26,358,698.00) y el anejo de estructura de costo acompañado con la Enmienda. En el Artículo 4.1.5.1.1 se comprometió, para los primero nueve (9) meses, la suma de $7,530,985, dando un promedio mensual de $836,776.11. En el Artículo 4.1.5.1.2 se comprometió, para los restantes doce (12) meses la cantidad de $18,827,713, dando un promedio mensual de $1,568,970.16.

53.    El anejo de estructura de costo acompañado con la Enmienda E establecía un aumento en la tarifa mensual de Metrobus, efectivo al 1 de julio de 2014, a $1,338.499 para la partida de doce (12) meses, según se establece en el Artículo 4.1.5.1.2.

54.    Al sumar las cantidades, según los números propuestos en el anejo de estructura de costo acompañado con la Enmienda, el total bajo esa enmienda equivale a $30,124,227.30.

55.    Sin embargo, los números relacionados con los primeros siete (7) meses no guardan relación ni reconcilian entre lo obligado en el contrato y lo establecido en el anejo de la enmienda.

56.    Para fines ilustrativos, véase la siguiente Tabla de análisis comparativo entre el texto del contrato versus las tablas de cómputo de pagos a realizarse:

| Análisis Costos Enmienda E | | | |
|---|---|---|---|
| Texto Contrato | Meses 1@9 | Meses 10@21 | Total Contrato |
| Total Anual | $ 7,530,985.00 | $18,827,713.00 | $26,358,698.00 |
| Promedio Mensual | $    836,776.11 | $ 1,568,976.08 | |
| | | | |
| **Anejo - Tabla Detalle de Costos** | | | **VS.** |
| Mensual | Meses 1@9 | Meses 10@21 | |
| Metro Urbano + Tu Conexion | $    230,471.16 | $    230,471.16 | |
| Metrobus | $ 1,024,705.00 | $   1,338,499.00 | |
| Sub Total | $ 1,255,176.16 | $ 1,568,970.16 | |
| Total | $11,296,585.44 | $18,827,641.92 | $30,124,227.36 |

| Análisis Diferencias en Costos Enmienda E | | | |
|---|---|---|---|
| Texto Contrato | Meses 1@9 | Meses 10@21 | Total Contrato |
| Total Anual | $ 7,530,985.00 | $18,827,713.00 | $26,358,698.00 |
| | | | |
| Anejo - Tabla Detalle de Costos | | | |
| Total Anual | $11,296,585.44 | $18,827,641.92 | $30,124,227.36 |
| | | | |
| **Diferencia** | | | |
| Total Anual | $ 3,765,600.44 | $         (71.08) | $  3,765,529.36 |

57.    Como puede colegirse del detalle de las Enmiendas al Contrato Original, gran parte de las cuantías facturadas y cobradas eran improcedentes por tratarse de servicios prestados previos a la presentación de las enmiendas correspondientes en contravención a la normativa aplicable a la contratación gubernamental. En varias instancias, las enmiendas al Contrato Original pactadas sin el beneficio de subasta o proceso de contratación gubernamental competitivo alguno, en la medida que proveen para reconocimientos de deuda, por información o creencia, se alega que sirven como subterfugio para el pago por servicios prestados fuera de contrato ya sea porque no habían sido contemplados bajo la(s) enmienda(s) previa(s) o porque representaban cuantías que excedían las pactadas en dicha(s) enmienda(s) previa(s).

C. *Informes y estados financieros requeridos por el Contrato*

58. Por otro lado, surge de la Sección 2.5.2 del Contrato Original que el Operador, entiéndase FTPR, se comprometió y acordó que, durante la vigencia del Contrato, presentaría periódicamente varios documentos a la ACT, incluyendo Estados Financieros Preliminares Trimestrales (2.5.2.10) y Estados Financieros Anuales Auditados (2.5.2.11).

59. De hecho, en esa misma disposición se estipuló que **la falta de presentación o la presentación tardía de estos documentos por parte de FTPR en más de dos (2) ocasiones consecutivas constituiría un incumplimiento del contrato y sería causa suficiente para la suspensión del procesamiento de cualquier factura presentada. (Énfasis Suplido).**

60. A pesar de lo anterior, por información o creencia, se alega que FTPR no cumplió oportunamente con la obligación de presentar sus propios estados financieros durante la vigencia del contrato ni para las respectivas enmiendas que fueron otorgadas. Aun así, continuó facturando y cobrando bajo los términos del mencionado contrato de servicio, lo que equivale a una reclamación falsa o fraudulenta para propósito de la Ley Núm. 154-2018.

61. Más aún, el Artículo 5.5 del Contrato Original establece como causal de incumplimiento cualquier cambio material adverso en la condición financiera de FTPR.

62. No obstante, surge de los Estados Financieros de FTPR y de sus *Balance Sheets* del 2010 al 2021, que a partir del año 2011 en adelante hubo un cambio significativo adverso en su balance de efectivo. Específicamente, dichos estados reflejan una reducción de aproximadamente $226,000.00 en efectivo a tan solo $1,000.00. Esto a pesar de que el Contrato Original con la ACT provee para que FTPR viniera obligado a notificar a la ACT cualquier cambio en su posición financiera y FTPR no lo notificara. Véase Sección 5.5.1.1 del Contrato Original.

63. Esto supuso un alto riesgo para el Gobierno de tener una empresa operando un contrato de $15,000,000 anuales para servicios de transportación pública, a pesar de que contaba con un flujo de efectivo tan deficiente e ínfimo como el reportado en sus Estados Financieros.

64. Tan es así, que recientemente, el Tribunal Supremo de Puerto Rico revocó la adjudicación del RFP S-23-08 por parte de la ACT a favor de FTPR, precisamente porque esta última entidad solo sometió los estados financieros de su entidad matriz, y no los suyos propios. Véase *Transporte Sonell, LLC v. Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico, First Transit PR, Inc.*, 2024 TSPR 82 (res. el 24 de julio de 2024).

65. Al así resolver, el máximo foro judicial destacó en ese caso lo siguiente:

Una búsqueda en el Registro de Corporaciones del Departamento de Estado nos permite apreciar que First Transit PR contaba con la situación financiera siguiente:

|  | Activos | Pasivos | Equidad |
|------|-----------|-----------|--------------|
| 2019 | $18,291,129 | $2,125,574 | $16,165,555 |
| 2020 | $18,537,355 | $2,150,137 | $16,387,218 |
| 2021 | $19,296,768 | $2,997,017 | $16,299,751 |
| 2022 | $17,774,879 | $3,057,607 | $14,717,272 |

**Con un patrimonio que no ha sobrepasado los $20,000,000 en los últimos años, nos surgen serias dudas en cuanto a si First Transit PR tiene la capacidad para manejar un Contrato como el aquí subastado, el cual excede los $50,000,000.** *Id.,* pág. 28 (énfasis suplido).

66.    Sin duda, el mismo raciocinio adoptado por el Tribunal Supremo para exponer sus dudas en cuanto a la capacidad financiera de FTPR es igualmente aplicable al Contrato Original y las enmiendas subsiguientes, que incluso sobrepasaban esa suma de $50,000,000.00.

67.    Peor aún, las facturas y otra documentación que la parte demandada ha remitido al Gobierno para obtener una remuneración por motivo de este contrato de servicio, basada en información incorrecta y sin cumplir con los términos del propio contrato, constituyen reclamaciones fraudulentas a tenor de lo dispuesto en la Ley Núm. 154-2018, conocida como la *Ley de Reclamaciones Fraudulentas a los Programas, Contratos y Servicios del Gobierno de Puerto Rico,* 32 LPRA § 2931 et seq., (en adelante "Ley Núm. 154-2018").

68.    Como si esto fuera poco, la ACT realizó el RFP S-23-08 en el 2022, la se le adjudicó a FTPR y se contrató nuevamente a dicha empresa. Sin embargo, producto de la reclamación legal instada por otro de los participantes en dicho RFP, la ACT se vio forzada a cancelar el contrato otorgado a FTPR ante el dictamen emitido por el Tribunal Supremo de Puerto Rico. De ese modo, se confirmó que FTPR debió ser descalificada y a su vez, se puede colegir que dicho contrato debe considerarse nulo *ab initio.*

## V.    CAUSAS DE ACCIÓN Y REMEDIOS SOLICITADOS

*Primera causa de acción: Reclamación Qui Tam, Ley Núm. 154-2018*

69.    Messo LLC, como Delator, adopta e incorpora por referencia todas las alegaciones y causas anterior y/o posteriormente alegadas en la Demanda para todos aquellos fines legales que pudieran resultar pertinentes.

70.    El Artículo 4.01(1) de la Ley Núm. 154-2018 provee, en lo pertinente, que cualquier persona

a. Con conocimiento presente o cause que se presente una reclamación falsa o fraudulenta para un pago para la aprobación de beneficios bajo cualquier Programa de Gobierno, incluyendo el Programa de Medicaid de Puerto Rico; **o por motivo de un contrato de servicio;**

b. Con conocimiento haga, use, o cause que se haga o se use un récord falso o una declaración que sea fundamental para someter una reclamación falsa o fraudulenta

bajo cualquier Programa de Gobierno, incluyendo el Programa de Medicaid de Puerto Rico, **o por motivo de un contrato de servicio;**

c. Conspire para cometer una violación a los incisos 1(a) y 1(b) de este Artículo...

Estará sujeto a pagar al Gobierno una penalidad civil de no menos de once mil ciento ochenta y un dólares ($11,181), pero no más de veintidós mil trescientos sesenta y tres dólares ($22,363) ...Además de esta penalidad civil, estará sujeto a pagar tres (3) veces la cantidad de los daños que haya recibido el Gobierno a consecuencia de esas actuaciones fraudulentas.

71.    En tanto razonablemente se estima que los fondos públicos facturados y cobrados ilegalmente por las Demandadas a la ACT mediante este esquema ascienden, como mínimo, a la cantidad de Cincuenta Millones de Dólares ($50,000,000.00), se solicita que, en restitución de los fondos públicos defraudados (bajo las disposiciones de la Ley 154-2018 o cualquier otro estatuto aplicable), se ordene a las partes demandadas solidariamente el pago del monto íntegro de todas las sumas cobradas indebidamente para con el Gobierno de Puerto Rico, así como el pago de una suma igual a tres (3) veces el daño sufrido por el Gobierno a consecuencia de esas actuaciones fraudulentas y el pago de las penalidades civiles dispuestas por el estatuto especial aquí invocado, consistentes en una suma no menor a los $11,181.00 pero no mayor a la suma de $22,363.00 por cada violación incurrida.[1]

72.    Los daños sufridos por el Gobierno de Puerto Rico, los cuales se estiman en sobre Cincuenta Millones de Dólares ($50,000,000.00), incluyen el costo en exceso de todas las enmiendas al Contrato Original que se otorgaron para añadir rutas y otros servicios sin subasta, RFP o RFQ, por lo cual no se pudo verificar si los precios facturados por FTPR se mantenían competitivos en el mercado.

73.    Por último, estos daños también incluyen todas las sumas de fondos públicos que FTPR cobró ilegal o indebidamente sin que se cumplieran con las normas aplicables a la contratación gubernamental en Puerto Rico y/o con los términos del propio Contrato (incluyendo el deber contractual de presentar Estados Financieros Preliminares Trimestrales y Estados Financieros Anuales Auditados de FTPR para que procediera cualquier cobro, factura o reclamación a la ACT por motivo del contrato).

74.    El Delator compareciente alega y reclama afirmativamente la compensación máxima permitida por la Ley Núm. 154-2018; así como el pago con cargo a las Demandadas de

---

[1] Como cuestión de derecho, estas penalidades serán ajustadas automáticamente cada año conforme las disposiciones del *Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015*.

las costas y gastos del litigio y la suma dispuesta por el estatuto especial invocado por concepto de honorarios de abogado.

*Segunda causa de acción o remedio alternativo: Cobro de lo indebido*

75.    Messo LLC, en su capacidad de Delator, adopta e incorpora por referencia todas las alegaciones y causas anterior y/o posteriormente alegadas en la Demanda para todos aquellos fines legales que pudieran resultar pertinentes.

76.    La doctrina del cobro de lo indebido está recogida en el Art. 1520 del Código Civil de Puerto Rico, el cual establece que "[q]uien, sin causa jurídica, ha hecho el pago de una cosa o cantidad que no debía, tiene derecho a exigir su restitución de quien lo recibió...". 31 LPRA sec. 10751.

77.    Conforme a esta figura, el que paga por error lo indebido tiene disponible una acción legal para pedir la devolución de lo pagado, independientemente que se trate de un error de hecho o de derecho.

78.    La normativa durante muchos años fue que ante el error de derecho no procedía la devolución de lo indebidamente pagado, pero si el error se estimaba de hecho, surgía la obligación de restituir lo pagado. Este razonamiento llegó a su fin en *ELA v. Crespo Torres*, 180 DPR 776 (2011), decisión en la cual se estableció "que cuando se recibe alguna cosa que no había derecho a cobrar y que por error ha sido entregada, ya sea por error de hecho o derecho, surge el deber de restituirlo".

79.    De otra parte, la Constitución de Puerto Rico establece que "[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley". Art. VI, Sec. 9, Const. PR., LPRA, Tomo 1.

80.    Por tal razón, la contratación gubernamental se encuentra revestida del más alto interés público, por involucrar el uso de bienes o fondos gubernamentales. *Demeter International, Inc. v. Secretario de Hacienda*, 199 DPR 706 (2018); *CFSE v. Unión de Médicos*, 170 DPR 443 (2007). En virtud de este mandato constitucional, el Tribunal Supremo ha sido consecuente al exigir el manejo ético y apropiado de los fondos públicos. *Vicar Builders v. ELA et al.*, 192 DPR 256 (2015); *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448 (2014); *Jaap Corp. v. Depto. Estado et al.*, 187 DPR 730 (2013). Como resultado, por imperativo constitucional el Estado está obligado a manejar los fondos públicos con el mayor celo, amparado en los más altos principios

éticos y fiduciarios. *Jaap Corp. v. Departamento de Estado et al., supra,* pág. 739.

81.    El interés del Estado en regular restrictivamente ese tipo de contratación va dirigido "a evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia, el descuido y los riesgos de incumplimiento." *Vicar Builders v. ELA*, 192 D.P.R. 256, 263 (2015); *Alco Corp. v. Mun. de Toa Alta*, 183 D.P.R. 530, 536–37 (2011); *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001, 1005, (1994).

82.    En armonía con lo anterior, los contratos con el Gobierno deben cumplir rigurosamente los requisitos de: (1) reducirse a escrito; (2) mantener un registro fiel para establecer su existencia *prima facie*; (3) remitir copia a la Oficina del Contralor a fin de una doble constancia de su otorgamiento, términos y existencia, y (4) acreditar que se realizó y otorgó 15 días antes. *Vicar Builders v. ELA et al., supra*, pág. 264; Ley Núm. 237-2004, Ley para Establecer Parámetros Uniformes en los Procesos de Contratación de Servicios Profesionales y Consultivos para las Agencias y Entidades Gubernamentales del ELA, según enmendada, 3 LPRA sec. 8613.

83.    De hecho, se ha establecido en nuestro ordenamiento jurídico que un contrato entre una parte privada y una entidad gubernamental que no cumpla con las disposiciones aplicables del Código Civil y, además, con las leyes especiales que impone controles fiscales y requisitos adicionales a la contratación gubernamental, **será nulo e inexistente**. *Rodríguez Ramos et al. v. ELA et al, supra*. Véase además la Ley Núm. 18 de 1975, según enmendada, conocida como la Ley de Registros de Contratos, 2 LPRA sec. 97 *et seq.*

84.    Esto incluye cualquier supuesto de contratación retroactiva, pues tal práctica coarta la función y política pública de proteger y salvaguardar la disposición de fondos públicos y, a su vez, impide el cumplimiento del proceso de escrutinio para otorgar los contratos gubernamentales. *Jaap Corp. v. Depto. Estado, supra*, pág. 748.

85.    En consecuencia, los contratos con el Estado no pueden ser retroactivos ya que, para poder ofrecer cualquier servicio, es imperativo que consten por escrito, previo a otorgamiento de cualquier prestación o intercambio de bienes y servicios. *Vicar Builders v. ELA, supra*, págs. 265–266. Ello así, pues "avalar la actuación de las partes acarrearía, en este caso en particular, darle vida retroactiva a un acto que no ocurrió como realmente se expuso en el contrato." *Alco Corp. v. Mun. de Toa Alta, supra*, pág. 544.

86.    En fin, el Tribunal Supremo ha reiterado que "cuando se recibe alguna cosa que no había derecho a cobrar y que ha sido entregada, ya sea por error de hecho o de derecho, surge el

deber de restituirlo". *ELA v. Crespo Torres, supra,* págs. 798-99.

87.     En fin, conforme a la normativa legal aplicable en Puerto Rico, queda expresamente prohibido el desembolso de fondos públicos para el pago de servicios que hayan sido prestados al Gobierno sin la existencia de un contrato debidamente formalizado y vigente al momento de la prestación del servicio. Asimismo, se prohíbe el pago por conceptos o cuantías que excedan los previamente estipulados en el contrato correspondiente. Esta disposición responde a los principios de legalidad presupuestaria y responsabilidad fiscal consagrados en la Constitución del Estado Libre Asociado de Puerto Rico, la Ley Núm. 230 de 23 de julio de 1974, según enmendada (Ley de Contabilidad del Gobierno), y la jurisprudencia del Tribunal Supremo de Puerto Rico, que reiteradamente ha sostenido que **el Estado no puede obligarse válidamente fuera de los términos de un contrato previamente formalizado,** y que **no procede el pago retroactivo por servicios sin contrato o en exceso de lo pactado.** En ese sentido, todo proveedor o contratista asume el riesgo de impago por cualquier servicio prestado **antes de la fecha de efectividad del contrato** o **por encima de las obligaciones contractuales autorizadas,** sin que surja derecho a reclamación, reembolso o compensación alguna contra el Estado.

88.     Surge de las alegaciones expuestas en los párrafos anteriores que los contratos otorgados entre FTPR y la ACT no cumplieron con las formalidades y las exigencias aplicables a la contratación gubernamental, pues el mismo se enmendó en múltiples ocasiones sin subasta, RFP o RFQ, a pesar de que ello contravenía la normativa aplicable a ese tipo de contratación gubernamental.

89.     Peor aún, surge de las alegaciones que anteceden un esquema de cobro indebido por renta de autobuses luego de que se traspasara su titularidad de FTPR a la ACT, lo que asciende a la suma de aproximadamente Once Millones Quinientos Mil Dólares ($11,500,000.00).

90.     De otra parte, FTPR incurrió en gastos de combustible y los facturó en su totalidad, a pesar de que estos no habían sido preaprobados por la ACT para reembolso, según lo requería el propio contrato para su facturación y pago.

91.     A su vez, también se desprende de las alegaciones que anteceden que FTPR cobró indebidamente a la ACT una cantidad sustancial de fondos públicos en virtud de un contrato con efectividad retroactiva, a pesar de que ese tipo de contratación en el contexto gubernamental adolece de nulidad absoluta.

92.     Específicamente, la Enmienda 2008-0002348-A para la compra de 20 autobuses

por la suma de $6,348,545.56 se otorgó el 10 de julio de 2010, mientras que la transacción consignada en ese negocio jurídico se hizo efectiva de manera retroactiva, al 15 de diciembre de 2009.

93.    Asimismo, FTPR cobró indebidamente unas cantidades sustanciales de fondos públicos sin presentar oportunamente sus Estados Financieros Preliminares Trimestrales los Estados Financieros Anuales Auditados y otra documentación exigida por el Contrato Original como condición para el pago de cualquier factura o reclamación.

94.    Además, a pesar de la determinación del Tribunal Supremo de Puerto Rico que advino final y firme el 8 de noviembre de 2024, por medio de la cual se determinó que First Transit debía ser descalificado del RFP S-22-24, a la fecha de esta demanda, First Transit continúa cobrando por servicios que se brindan bajo un contrato producto de dicho RFP que, a todas luces, es ilegal y nulo.

95.    Por consiguiente, y a tenor de la doctrina de cobro de lo indebido y los pronunciamientos del Tribunal Supremo al respecto, y como remedio alternativo solicitado en virtud de la Regla 6.1(2) de Procedimiento Civil, 32 LPRA Ap. V, se solicita a este Honorable Tribunal que ordene a FTPR a restituir y devolver al erario todas las cantidades cobradas indebidamente a la ACT en virtud del Contrato Original y las enmiendas subsiguientes, lo que asciende a una suma aproximada de Ochenta y Cinco Millones de Dólares ($85,000,000.00).

**EN MÉRITO DE LO ANTES EXPUESTO**, se solicita muy respetuosamente que se declare Con lugar la presente Demanda y, en su consecuencia:

1.    Condene a las demandadas, en reivindicación de los fondos públicos defraudados y en reclamación *Qui Tam*, al pago de no menos de $11,181.00 y no más de $22,363.00 en multas por cada reclamación falsa o fraudulenta presentada por FTPR para el cobro ilegal y/o indebido de fondos públicos; así como la restitución de todos los fondos públicos cobrados de manera ilegal y/o indebida por FTPR al Gobierno de Puerto Rico y los daños que tal cobro provocó, la cual se estima en una suma no menor a los Ochenta y Cinco Millones de Dólares ($85,000,000.00); y tres (3) veces los daños sufridos por el Gobierno de Puerto Rico a causa de las acciones y omisiones de las demandadas, en conformidad con la Ley 154-2018 y cualquier otra disposición de ley aplicable;

2.  Conceda al Delator compareciente la compensación máxima permitida por la Ley Núm. 154-2018;

3.  Conceda al Delator compareciente las costas, gastos y honorarios de abogado en conformidad con la Ley 154-2018;

4.  En la alternativa, y a tenor de la doctrina de cobro de lo indebido y los pronunciamientos del Tribunal Supremo al respecto, se solicita a este Honorable Tribunal que ordene a FTPR a restituir y devolver al erario todas las cantidades cobradas indebidamente a la ACT en virtud del Contrato Original y las enmiendas subsiguientes, lo que asciende a una suma aproximada de Ciento Cincuenta Millones de Dólares ($150,000,000); y

5.  Dicte cualquier otra orden o remedio que entienda procedente en Derecho y/o equidad.

**RESPETUOSAMENTE SOMETIDA.**

En San Juan, Puerto Rico, hoy 11 de agosto de 2025.

f/Carlos J. Sagardía Abreu
RUA 17227
**STRATEGIA LEGALE LLC**
1353 Luis Vigoreaux Ave. PMB 678
Guaynabo, Puerto Rico 00966
(787) 360-7924
cjsa@strategialegalepr.com


f/Alfonso S. Martínez Piovanetti
RUA 16726
PO Box 8013
San Juan, Puerto Rico 00910
(787)234-6239
alfonso@martinezpiovanetti.com