UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **GOVERNMENT OF PUERTO RICO** *ex rel.* **MESSO LLC,**<br><br>Plaintiff<br><br>v.<br><br>**FIRST TRANSIT OF PUERTO RICO, INC.; FIRST TRANSIT INC.; FIRST TRANSIT TRANSPORTATION, LLC; FIRST TRANSIT PARENT, INC.; FIRSTGROUP AMERICA, INC. (FGA); FIRSTGROUP AMERICA HOLDINGS, INC.; FIRSTGROUP INTERNATIONAL, INC.; FIRST STUDENT PARENT, INC.; FIRST STUDENT, INC.; FIRST STUDENT HOLDING COMPANY LLC; FIRST STUDENT SERVICES LLC; FIRST STUDENT TRANSPORTATION LLC; FIRSTGROUP AMERICA PLC; RECESS HOLDCO LLC; TRANSDEV GROUP; TRANSDEV NORTH AMERICA, INC.,**<br><br>Defendants | CIVIL NO. 26-cv-01071 (GMM)<br><br>(On removal from Puerto Rico Civil Action No. SJ-2025-CV-07134 (603)) |

## MOTION TO REMAND

**TO THE HONORABLE COURT:**

    **COMES NOW** Plaintiff-Relator MESSO, LLC ("Relator"), through undersigned counsel, and respectfully moves this Honorable Court to remand this action to the Commonwealth Court of First Instance, San Juan Part, from which it was removed. In support thereof, Relator states and avers as follows:

1

## I. INTRODUCTION

The Recess Defendants' Notice of Removal (Dkt. No. 1) asks this Court to exercise federal question jurisdiction under 28 U.S.C. § 1331 over a *qui tam* fraud action filed under Puerto Rico law, in Puerto Rico courts, in the name of the Government of Puerto Rico. The jurisdictional theory advanced is the embedded federal question doctrine of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), and *Gunn v. Minton*, 568 U.S. 251 (2013). The theory fails at every step.

The complaint asserts a single cause of action under Act No. 154-2018 –*Ley de Reclamaciones Fraudulentas a los Programas, Contratos y Servicios del Gobierno de Puerto Rico,* translated as False Claims to Government of Puerto Rico Programs, Contracts, and Services Act, 32 L.P.R.A. §§ 2931 *et seq.* ("Act No. 154-2018")– and an alternative claim under the civil-law doctrine of *cobro de lo indebido* (recovery of undue payment) codified at Article 1520 of the Puerto Rico Civil Code, 31 L.P.R.A. § 10751. No federal cause of action is pleaded. The references to federal procurement regulations scattered throughout the complaint serve as evidentiary context for the element of falsity. Thus, they are not the source of any cause of action, and they do not transform this state-law fraud case into a federal one.

The Recess Defendants –FirstGroup America, Inc., FirstGroup America Holdings, Inc., FirstGroup International, Inc., First Student Parent, Inc., First Student, Inc., and Recess Holdco LLC– are among the corporate entities that, according to the complaint, form part of the corporate structure, chain of control, and corporate succession transactions related to FTPR and First Transit, Inc. The complaint alleges that these entities served variously as corporate guarantors of FTPR's contractual obligations, as affiliated entities through which assets, personnel, and revenue were managed within the FirstGroup conglomerate, or as participants in the acquisition and succession

2

of First Transit's operations. Compl. ¶ 20. Their removal strategy is transparent: by recharacterizing this fraud action as fundamentally about federal regulatory interpretation, they seek to shift the litigation away from fact-intensive questions of fraudulent billing and retroactive contracting under Puerto Rico law –the fact-intensive state-law questions that dominate this case– and toward abstract questions of federal procurement law. The *Grable* doctrine does not exist to serve this purpose.

## II. PROCEDURAL BACKGROUND

On August 11, 2025, Relator filed this *qui tam* action in the Commonwealth Court of First Instance, San Juan Part, under Case No. SJ-2025-CV-07134. The action was brought on behalf of the Government of Puerto Rico pursuant to Act No. 154-2018. The complaint alleges that the defendants –comprising the corporate entities that owned, controlled, and operated First Transit of Puerto Rico, Inc. ("FTPR")– submitted false claims to the Puerto Rico Highway and Transportation Authority ("PRHTA") through a scheme involving fraudulent billing, retroactive contract amendments, continued billing for the rental of buses already transferred to the government, failure to maintain required licenses, and submission of false financial statements. The complaint seeks restitution of approximately $85 million, treble damages under Act No. 154-2018, per-violation civil penalties, and attorney's fees.

On February 9, 2026, the Recess Defendants filed their Notice of Removal invoking *Grable* federal question jurisdiction. Two additional groups of defendants filed separate Notices of Removal on the same date, each advancing different jurisdictional theories. Those removals will be the subject of separate motions. This motion addresses exclusively the *Grable* theory advanced by the Recess Defendants in Civil Action No. 3:26-cv-01071.

## III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a state-court civil action to federal court only if the action could have been filed originally in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The removing party bears the burden of establishing federal jurisdiction. *Roselló-González v. Calderón-Serra*, 398 F.3d 1, 11 (1st Cir. 2004). Removal statutes are strictly construed, with all doubts resolved in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999).

Federal-question jurisdiction under 28 U.S.C. § 1331 is governed by the well-pleaded complaint rule: federal jurisdiction exists only when a federal question appears on the face of the plaintiff's properly pleaded complaint. *Caterpillar*, 482 U.S. at 392. The plaintiff is the "master of the complaint" and may choose to rely exclusively on state law. *Id.* at 398–99. A federal defense –including preemption, and even if the defense is anticipated in the plaintiff's complaint– does not confer jurisdiction. *Franchise Tax Bd. v. Construction Laborers Vacation Tr.*, 463 U.S. 1, 14 (1983); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

There exists a "special and small category" of cases in which a state-law claim may "arise under" federal law. *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). Such jurisdiction attaches where the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). The Supreme Court has distilled this into four requirements: the federal issue must be (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the

federal-state balance. *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Municipality of Mayagüez v. Corporación Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 13 (1st Cir. 2013). All of these four prongs have to be met in order for federal jurisdiction to be proper. Therefore, failure on *any single prong* defeats jurisdiction. *Gunn*, 568 U.S. at 258.

## IV. ARGUMENT

### A. The Well-Pleaded Complaint Rule Forecloses Removal

As a threshold matter, the Notice of Removal violates the foundational principle that the plaintiff is the master of the complaint. *Caterpillar*, 482 U.S. at 392; *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (reaffirming that "jurisdiction follows from (and only from) the operative pleading"). The complaint asserts a single cause of action under Act No. 154-2018 and an alternative claim under the civil-law doctrine of *cobro de lo indebido*, both creatures of Puerto Rico law. No federal cause of action is pleaded anywhere in the complaint. The Recess Defendants' characterization of Act No. 154-2018 a "mere window dressing" for a federal regulatory dispute (Dkt. 1, p. 3) is an attempt to rewrite the complaint, which is precisely the kind of defendant recharacterization that the well-pleaded complaint rule was designed to prohibit.

That the complaint references federal procurement standards as part of the evidentiary landscape does not alter this analysis. The cause of action arises under Act No. 154-2018, and the remedy is determined entirely by that statute. Federal regulatory references serve as one of several evidentiary bases from which the element of falsity may be established, alongside Puerto Rico constitutional and administrative-law requirements, the contractual terms of the PRHTA-FTPR agreement, and applicable Commonwealth licensing standards. This is evidentiary use, not a jurisdictional hook. *See Merrell Dow*, 478 U.S. at 813 (state negligence claim referencing federal drug safety standards did not arise under federal law). As the First Circuit has observed in a

different context, "[i]t is the nature of the action before the court, not the nature of the loan program, that establishes the existence or absence of federal jurisdiction." *Inter-Am. Univ. of P.R., Inc. v. Concepcion*, 716 F.2d 933, 934 (1st Cir. 1983); *see also HICA Educ. Loan Corp. v. Rodriguez*, 31 F. Supp. 3d 351, 356 (D.P.R. 2014) (applying *Concepcion* to dismiss for lack of jurisdiction where plaintiff sought to collect on federally regulated promissory note, reasoning that "neither the HEAL statute nor its regulations furnish a cause of action").

### B. The Grable/Gunn Four-Part Test Is Not Satisfied

The Recess Defendants' sole remaining argument is that this case falls within the "special and small category" of state-law claims that embed a federal question under *Grable* and *Gunn*. It does not. The four-prong test is conjunctive —the removing party must satisfy all four elements— and here, every prong cuts against jurisdiction. The First Circuit's decision in *Municipality of Mayagüez* is dispositive. There, the court confronted a state-law breach-of-contract claim alleging that a local development corporation had violated HUD regulations incorporated into a grant agreement—a jurisdictional theory materially indistinguishable from the one advanced here. The First Circuit vacated for lack of subject matter jurisdiction, holding that under that set of facts, "compliance with an 'intricate and detailed set of federal regulatory requirements and a connection to 'federal monies' were not sufficient in themselves "to warrant federal-question jurisdiction over a state law breach of contract claim." 726 F.3d at 17 (abrogating *Municipality of San Juan v. COFECC*, 415 F.3d 145 (1st Cir. 2005)). The reasoning applies with full force here.

The analysis must begin with the threshold requirement that the federal issue be "necessarily raised." As the First Circuit recently held, a state action necessarily raises a federal issue only when "it is not logically possible for the plaintiff to prevail ... without affirmatively

6

answering the [federal] question." *Tyngsboro Sports II Solar, LLC v. National Grid USA Serv. Co.*, 88 F.4th 58, 66 (1st Cir. 2023) (quoting *R.I. Fishermen's All., Inc. v. R.I. Dep't of Envt'l Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009)). Critically, the plaintiff "must do more than bring claims that are merely 'bound up' with federal interests; federal law must be an 'essential element' of the state-law claims." *Id.* (citing *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 56–57 (1st Cir. 2022)). This requirement is not met where the plaintiff can prevail through alternative theories that bypass any federal question altogether. The complaint here is built on multiple, independent theories of falsity, the great majority of which require no federal-law interpretation whatsoever. The complaint charges that contract amendments were executed retroactively, rendering them void *ab initio* under the Puerto Rico Constitution and settled administrative-law and Puerto Rico contract law principles. *See* P.R. Const. art. VI, § 9; *Rodríguez Ramos v. ELA*, 190 D.P.R. 448 (2014); *Jaap Corp. v. Depto. Estado*, 187 D.P.R. 730 (2013).

      That is strictly a question of Puerto Rico public contract law. The complaint further alleges that FTPR billed the PRHTA for the rental of vehicles whose title had already been transferred to the government. Whether the defendants billed for buses they did not own is a factual inquiry that implicates no federal regulatory scheme. Similarly, the complaint alleges that FTPR failed to maintain required Puerto Rico licenses and submitted its parent company's financial statements in place of its own, a practice that the Puerto Rico Supreme Court condemned in *Transporte Sonell v. First Transit PR, Inc.*, 214 D.P.R. 633 (2024). These are all questions of Puerto Rico regulatory and contract law. Indeed, the alternative claim under *cobro de lo indebido* –a purely civil-law doctrine with no federal component whatsoever– independently defeats the necessity prong, because Relator can prevail on that claim without any reference to federal law.

Because the complaint can be proved in full through these independent theories—none of which requires interpreting 2 C.F.R. § 200, FTA Circular 4220.1, or any other federal regulation—the federal issue is not "necessarily raised." The Recess Defendants isolate one strand of a multifaceted fraud complaint and attempt to elevate it into a jurisdictional hook, but *Grable* requires that the federal issue be unavoidable, not merely present. Where the plaintiff can win without ever reaching the federal question, this prong is not met. *See Tyngsboro*, 88 F.4th at 66–67 (finding necessity lacking on two of three state-law claims because plaintiffs could prevail without resolving the embedded federal question). The First Circuit reached the same conclusion in *Industria Lechera de P.R., Inc. v. Beiró*, 989 F.3d 116, 121 (1st Cir. 2021), where the court found no federal ingredient jurisdiction over a petition "based on a failure to comply with Puerto Rico law, not federal law," even though a prior federal consent decree and federal regulatory framework hovered in the background of the dispute.

The analysis does not improve for the Recess Defendants on the second prong. *Gunn* requires an "actually disputed" federal issue, or a genuine legal controversy over the meaning of federal law. 568 U.S. at 258. The Notice of Removal asserts that the complaint raises disputed questions about the interpretation of 2 C.F.R. § 200 and FTA Circular 4220.1. But the complaint does not ask any court to interpret these regulations in the abstract. No party disputes that 2 C.F.R. § 200 requires competitive procurement for contracts funded with federal grants. The dispute is whether the defendants actually complied with that standard—a *factual* question, not a *legal* one. As such, no party contends that 2 C.F.R. § 200 means something other than what it plainly states. The dispute is whether defendants complied with those requirements. Again, this is a question of historical fact, not federal legal interpretation. Again, *Grable/Gunn* analysis requires an actually disputed legal question of federal law, not a factual disagreement about compliance with a federal

standard whose meaning is undisputed. As the First Circuit recognized in *Mayagüez*, when the disputes between the parties are "overwhelmingly factual"—such as whether certain parcels were properly developed, whether accounting systems were adequate, and whether procurement rules were followed—there is no disputed legal question of the kind that *Grable* demands. 726 F.3d at 14–15.

The substantiality inquiry —which is the heart of the *Grable/Gunn* analysis— is where the Recess Defendants 'theory most clearly collapses. The Supreme Court has stressed that "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim "necessarily raise[s]" a disputed federal issue, as *Grable* separately requires. The substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. In *Mayagüez*, the First Circuit articulated two markers of substantiality: first, whether the case presents a "nearly pure issue of law" whose resolution would "govern a large number of cases"; and second, whether resolution of the issue has "broader significance… for the Federal Government". 726 F.3d at 14, citing *Gunn*, 568 U.S. at 260. Neither marker is present here.

In *Grable* itself, the Court found substantiality because the meaning of the federal tax notice provision was "an important issue of federal law that sensibly belongs in a federal court", the Government had a "direct interest in the availability of a federal forum to vindicate its own administrative action", and exercising jurisdiction would portend only a "microscopic effect on the federal-state division of labor" given the rarity of state title cases raising contested federal tax questions. 545 U.S. at 309, 315. The contrast with this case could not be sharper. Here, the core questions are essentially fact-bound, not pure issues of law: Did the defendants bill for buses they

9

did not own? Were contract amendments executed retroactively? Did FTPR possess valid licenses? Did the defendants submit fraudulent financial statements? These are "situation-specific" factual inquiries whose resolution will not establish any federal principle of general applicability and do not require the availability of a federal forum to vindicate any federal administrative action. *Id. See also, Empire HealthChoice*, 547 U.S. at 700–01; *Gunn*, 568 U.S. at 259–61. The *Mayagüez* court confronted materially similar circumstances: a contract dispute involving alleged failures to comply with HUD procurement regulations (24 C.F.R. §§ 84.21, 84.44, 570.309) and found the claims "fact-bound and situation-specific" with no broader implications for federal law. 726 F.3d at 14–15.

The *Mayagüez* court further held that even though federal grant funds and an "intricate and detailed set of federal regulatory requirements" were at issue, the dispute did not "involve a true risk to the interests of a federal agency, program, or statutory scheme." 726 F.3d at 17. Moreover, it was noted that HUD "did not draft the contract between the parties or issue instructions that led to the alleged breach," and that "there [was] no legal question that will apply in a host of other cases." *Id.* at 15. The same is true here: the FTA did not draft the PRHTA-FTPR service agreements; no FTA action is challenged; and this Court's resolution of whether FTPR billed for buses it did not own will establish no federal principle. *See also Oriental Fin. Servs. Corp. v. Betancourt-Figueroa*, 531 F. Supp. 3d 485, 490–91 (D.P.R. 2021) (applying *Mayagüez* to reject *Grable* jurisdiction where "there is no federal department or agency involved in the dispute, and the resolution of the breach of contract claims will not result in a new interpretation of federal regulations that could impact a large number of future cases"); *Administración de Seguros de Salud de P.R. v. Triple-S Salud, Inc.*, 212 F. Supp. 3d 283, 287–88 (D.P.R. 2015) (applying *Mayagüez*

10

to remand government agency's contract enforcement action against health insurer where federal regulations —HIPAA and HITECH— were extensively incorporated into the parties 'contract, finding "the looming dispute between the parties is overwhelmingly factual, rather than involving disputes over the meaning of the various federal regulations incorporated in their contract"). Most recently, in *Tyngsboro Sports II Solar*, the First Circuit rejected *Grable* jurisdiction even on a claim where the court found the necessity prong satisfied, holding that the claim failed substantiality because the complaint did not "show that a judgment would pose a risk to some federal actor or program" and the question would not govern a "large number" of cases. 88 F.4th at 68–69.

The Recess Defendants suggest that a state court's analysis of federal procurement standards could destabilize federal grant administration. But no FTA action is challenged in this case; the FTA retains its own independent enforcement mechanisms—including suspension, debarment, and fund recovery—that are entirely unaffected by this *qui tam* action; and a state court ruling on whether FTPR committed fraud under Puerto Rico law does not bind the FTA on any question of federal regulatory interpretation. This argument proves far too much. If the mere reference to federal regulatory standards in a state fraud complaint were sufficient to create *Grable* jurisdiction, then every state false claims act case involving federally funded programs would be removable to federal court. parallel enforcement architecture that Congress has affirmatively encouraged. See 42 U.S.C. § 1396h (Deficit Reduction Act of 2005, providing financial incentives for states to enact qualifying false claims acts). Accepting the Recess Defendants' theory would permit removal in virtually every one of these cases, eviscerating the congressionally designed system of parallel enforcement. The Supreme Court has repeatedly warned against jurisdictional theories that would attract a "horde of original filings and removal cases" to the federal courts. *Grable*, 545 U.S. at 318 (discussing *Merrell Dow*, 478 U.S. at 811–12).

11

Finally, exercising jurisdiction here would disrupt the congressionally approved balance of federal and state judicial responsibilities. As previously stated, Congress expressly designed a system in which federal and state false claims enforcement operate in parallel. The federal False Claims Act, 31 U.S.C. §§ 3729–3733, coexists with around thirty state analogs, many enacted at Congress's affirmative encouragement through the incentive structure of 42 U.S.C. § 1396h. Puerto Rico's Act No. 154-2018 is part of this deliberate architecture. Federalizing state false claims enforcement every time a complaint references federal regulatory standards as evidence of falsity would destroy the very parallelism Congress intended.

This is a *qui tam* action brought in the name of the Government of Puerto Rico to enforce Puerto Rico law in Puerto Rico courts. The Commonwealth's sovereign interest in adjudicating fraud committed against its own instrumentalities under its own statutes is entitled to the highest respect. The presumption against removal is at its apex when the removed action is one brought by a sovereign in its own courts to enforce its own law. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012); *see also West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178–79 (4th Cir. 2011). Indeed, the Puerto Rico Department of Justice evaluated this action under Act No. 154-2018 and affirmatively authorized the Relator, Messo, LLC, to proceed on behalf of the Government of Puerto Rico. That the Commonwealth's chief law officer has examined the claims, found them meritorious enough to authorize prosecution in the Government's name, and elected to entrust the litigation to the Relator under Article 4.02 of Act No. 154-2018 underscores that this is a sovereign enforcement action, not a private dispute dressed in *qui tam* clothing. Removing such an action to federal court over the sovereign's objection disserves the very comity principles that constrain *Grable* jurisdiction. Again, *Grable* jurisdiction exists only for a "special and small category" of cases. *Empire HealthChoice Assurance, Inc.*, 547 U.S. at 699.

A garden-variety fraud action under a state statute, brought by a state-authorized relator, in state court, involving fact-bound questions about billing practices and retroactive contracting, does not belong in that category.

## V. THE REFERENCES TO FEDERAL STANDARDS ARE EVIDENTIARY, NOT JURISDICTIONAL

As demonstrated at length in Section IV.B, courts routinely reject *Grable* removal where a state fraud claim merely references federal standards as the backdrop for alleged misconduct, and the First Circuit has squarely so held. *Mayagüez*, 726 F.3d at 14–17; *see also Merrell Dow*, 478 U.S. at 813. The specific evidentiary role of federal standards in this complaint confirms the point.

The Recess Defendants' reliance on the complaint's mention of 2 C.F.R. § 200 is unavailing. The complaint cites that regulation as one of several sources establishing that the defendants knew their conduct was improper. But it also relies on Puerto Rico's own government contracting norms, the contractual requirements of the PRHTA-FTPR agreement, and constitutional principles prohibiting retroactive public contracts. The federal regulation is one piece of evidence in a multifaceted fraud case; it is not the sole and controlling legal pivot point that *Grable* demands.

The Recess Defendants' citation to 2 C.F.R. § 200.113 –which requires reports of fraud to federal inspectors general– is creative but ultimately irrelevant. That provision creates a reporting obligation; it neither confers federal jurisdiction over state enforcement actions nor suggests any tension between state *qui tam* actions and federal oversight. To the contrary, the existence of parallel federal reporting requirements reinforces that Congress contemplated concurrent enforcement at both levels of government.

## VI. RESERVATION OF RIGHT TO SEEK ATTORNEY'S FEES

Relator reserves the right to seek attorney's fees and costs incurred as a result of removal pursuant to 28 U.S.C. § 1447(c). Under *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), fees are appropriate where removal lacked an "objectively reasonable basis." Given that *Grable* represents a special and small category of cases, and that binding First Circuit authority squarely holds that compliance with federal regulatory requirements and a connection to federal funds do not alone suffice for *Grable* jurisdiction, *Mayagüez*, 726 F.3d at 17, Relator respectfully submits that the Recess Defendants' removal lacked an objectively reasonable basis in light of binding First Circuit authority squarely foreclosing their jurisdictional theory.

## VII. CONCLUSION

The Recess Defendants' *Grable* theory asks this Court to rewrite the Relator's well-pleaded complaint, federalize a state fraud action under a state statute, and open the floodgates to federal jurisdiction over every state false claims act case involving federally funded programs. The Supreme Court's decisions in *Grable*, *Gunn*, and *Empire HealthChoice*—and the First Circuit's application of those decisions in *Mayagüez*, *Tyngsboro Sports II Solar*, and *Industria Lechera*—foreclose this result. All four prongs of the *Grable/Gunn* test favor remand: the federal issue is not necessarily raised because the complaint pleads multiple independent theories of falsity requiring no federal-law interpretation; the federal issue is not actually disputed as a legal question; the federal issue is not substantial to the federal system as a whole because this is a fact-bound fraud case; and exercising jurisdiction would disrupt the congressionally approved balance of federal and state false claims enforcement.

Because this Court lacks subject matter jurisdiction, remand is mandatory. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

**WHEREFORE**, Relator Messo, LLC respectfully requests that this Honorable Court:

1. GRANT this Motion and REMAND this action to the Commonwealth Court of First Instance, San Juan Part, Case No. SJ-2025-CV-07134;

2. Award Relator its reasonable attorney's fees and costs incurred as a result of the improper removal pursuant to 28 U.S.C. § 1447(c); and

3. Grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

Dated: March 4, 2026.

San Juan, Puerto Rico.

*/s/ Carlos J. Sagardía Abreu*
Carlos J. Sagardía Abreu
USDC-PR Bar No. 227510
**STRATEGIA LEGALE LLC**
1353 Ave. Luis Vigoreaux PMB 678
Guaynabo, PR 00966
Tel: (787) 360-7924
Email: cjsa@strategialegalepr.com

*/s/ Alfonso S. Martínez Piovanetti*
ALFONSO S. MARTÍNEZ PIOVANETTI
USDC-PR Bar No. 228813
PO Box 8013
San Juan, PR 00910
Tel. (787) 234-6239
alfonso@martinezpiovanetti.com

*Counsel for Plaintiff-Relator MESSO, LLC*

**CERTIFICATE OF SERVICE**

I, Carlos J. Sagardía Abreu, hereby certify that on this same date, I filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

In San Juan, Puerto Rico, this 4th day of March 2026.

*/s/ Carlos J. Sagardía Abreu*
Carlos J. Sagardía Abreu